TANKERSLEY ET VIR *v.* MONTGOMERY COUNTY BOARD OF APPEALS ET AL.

[No. 130, September Term, 1962.]

*Decided January 16, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, HORNEY and MARBURY, JJ.

*R. Edwin Brown* and *J. Alex Johnson, Jr.,* for the appellants.

*Douglas H. Moore, Jr., Deputy County Attorney for Montgomery County,* and *Thomas J. Wacker, Jr., Assistant County Attorney,* with whom was *Alfred H. Carter, County Attorney,* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

In this zoning case from Montgomery County, the appellants sought to obtain the right to construct and operate, upon a portion of their property, a stone quarry and crushing plant. The appellants own a large tract of land in what is still a rural section of the County, near the village of Boyds. In 1958, they petitioned the County Council for a reclassification of 200 acres of their land from RR (Rural Residential) to I-2 (Heavy Industrial). The application was denied, and a second application for the rezoning of 60 acres was withdrawn. Another application for reclassification of 100 acres was filed in 1961, and an application for a special exception was also filed with the Board of Appeals. Both applications were denied, and on appeal to the circuit court, the cases were consolidated. From an affirmance in each case, the appeal comes here.

The extensive testimony makes it clear that there is a valuable deposit of diabase stone, useful as a road material, underlying the appellants' property to a depth of more than 200 feet, and covering an area of some three and one-half square miles. Roads in that part of the County are narrow and largely unimproved. There was testimony that they would be quite inadequate to accommodate the volume of

truck transportation in contemplation. There was also testimony that the operation of a quarry and crushing plant would cause noise, dirt, danger to school children and damage to water resources in what is now an almost solidly agricultural and residential community. The appellants sought to minimize these effects by offering to construct a new private road over their property to by-pass the school, but it was pointed out that this would increase the traffic at the point of exit and at a railroad underpass. They also sought to avoid the effects of blasting, noise and dust, by limiting the proposed reclassification or special exception to acreage entirely surrounded by a buffer strip of their own land.

The appellants strongly contend that the denial of their petition amounts to a taking of their property under the rule laid down in such cases as *Frankel v. City of Baltimore,* 223 Md. 97 and cases there cited. Cf. *Reiskin v. Mont. County Council,* 229 Md. 142. We think, however, that the appellants fell short of establishing that the denial of their petition would deprive them of any reasonable use of their property. We think the case falls in the pattern of *Walker v. Talbot County,* 208 Md. 72, 95 and *County Council v. Gendleman,* 227 Md. 491, 498. The appellants rely upon the case of *Consolidated Rock Products Co. v. City of Los Angeles,* 15 Cal. Rptr. 775, as closely analogous on its facts. As the appellees point out, the case was reversed on appeal, 370 P. 2d 342, app. dism. 371 U. S. 36, for want of a substantial Federal question. Cf. *Howard County v. Merryman,* 222 Md. 314. The fact that a natural resource is involved is not controlling. The question is whether the prohibition can be sustained under the police power.

The Council and the Board found that the most suitable future development of the whole region was for home sites, and that this development would be frustrated if industrial uses of the type in question were permitted. The appellants produced testimony that the rock underlay would make it virtually impossible to deal with sewage problems. But the Council took the position that these problems were not insoluble. They noted that the rock outcroppings were inter-

spersed with tillable soil, that there were a number of existing residences having adequate disposal fields, that sewage lagoons were feasible and in use in other parts of the State, and that there was a plan in being for a public sewerage system to take care of the whole area, along Little Seneca Creek. There was testimony to support the findings, although it must be admitted that most of the expert testimony was to the contrary.

Under the circumstances we think the matter was at least fairly debatable. It is true that the Planning Commission, differing from its Technical Staff, thought that the advantages to the County of developing a unique natural resource, and a local source of road material, outweighed the disadvantages incident to a quarrying and stone-crushing operation in a residential zone. But the Council took the other view. The failure of the Board to grant a special exception was based upon their findings as to the adverse effects upon traffic and the public roads, and upon the community at large. The denial was based, to some extent, upon their construction of the ordinance, as not permitting a crushing plant, as distinguished from a quarry. The trial court ruled that the construction was correct. We find it unnecessary to pass on the point, as the other reasons assigned by the Board are adequate to support the denial. The appellants do not directly challenge the construction, but argue that it is illogical to separate the two operations, since it is impractical to transport stone for crushing at another site. That, again, would seem to be a matter of legislative policy.

The appellants complain that the Board violated its own rules by holding a further hearing, after it had heard the appellants' witnesses and adjourned for the sole purpose of hearing one additional witness. In the meantime, a number of protestants appeared, claiming that they had received no notice, because they were not adjoining landowners, the proposed site being entirely surrounded by other land of the appellants. Under the unusual circumstances, we cannot find that the Board abused its discretion in having a further hearing upon a showing that the protestants could not reasonably have presented their evidence at the first hearing. Technically

it was not a rehearing, because the matter was still open since no resolution had been adopted. Cf. *Kay Constr. Co. v. County Council,* 227 Md. 479, 484. Likewise, we find no merit in the contention that the appellants were unreasonably restricted as to time. The failure of the trial court to rule upon certain procedural questions presented by the record would not justify a reversal. The court stated that it would serve no useful purpose to review the evidence in detail. Clearly, there was no reversible error.

In view of our conclusion it is unnecessary to deal with the motion ne recipiatur and the failure of the appellees to print certain testimony. With or without the testimony in question, we find a proper basis for the court's decision.

*Order affirmed, costs to be paid by the appellants.*