Ina R. DAHL, also known as Ina
R. Krikava, Plaintiff,

v.

CITY OF PALO ALTO, a chartered city,
Defendant.

No. C–73–1480–CBR.

United States District Court,
N. D. California.

March 19, 1974.

Frank Lee Crist, Jr., Crist, Crist, Griffiths, Bryant & Schulz, Palo Alto, Cal., for plaintiff.

Robert K. Booth, Jr., City Atty., City of Palo Alto, Palo Alto, Cal., W. J. Turner, Jackson, Turner & Mulcare, Burlingame, Cal., Fred Caploe, Atkinson, Farasyn & Smith, Mountain View, Cal., for respondent.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

This case arises from the rezoning of the Foothills area in Palo Alto from

"Residential Estates" (one-acre minimum residential lot size) to "O–S District" (a newly created open space classification with residential uses restricted to a ten-acre minimum residential lot size). Plaintiff alleges that she owned 291 acres of unimproved real property in this area prior to its annexation in 1959 by the City of Palo Alto. She claims that authorized agents of the City induced her and other similarly situated property owners to allow annexation of their property by promising that the zoning would remain essentially the same (one-acre minimum lot size) and that development would be permitted as soon as utilities could be extended to their property. After annexation, plaintiff's property was zoned Residential Estates, and plaintiff was thereafter assessed for the installation of sewer and water facilities, calculated on the basis of development at one dwelling per acre.

After annexation, various studies of the propriety of the Foothills area zoning were made by the City and citizen groups. In connection therewith, on July 3, 1969, the Planning Staff of the City of Palo Alto sent a letter to Foothills landowners requesting a voluntary moratorium on development pending the completion of one of these studies. Plaintiff alleges that the moratorium and this specific study's recommendation that the property be acquired for open space caused a default by a purchaser of a portion of her land. The voluntary moratorium was followed on July 19, 1971, by the passage of Ordinance No. 2612 which established a six-month moratorium on subdivision construction, zone changes, use permits and building and grading permits. The moratorium was extended until August 28, 1972, by Ordinance No. 2647. On June -5, 1972, Palo Alto amended its Municipal Code to establish the new O–S District classification, and on August 14, 1972, pursuant to Ordinance No. 2671, plaintiff's land was so reclassified.

Plaintiff's principal contention is that the rezoning precludes all reasonable uses of her land while bearing no reasonable relation to the public health, safety, morals or public welfare; that it is arbitrary, capricious and unreasonable; and that it thus constitutes a taking of her property without payment of just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution. Plaintiff also contends that the moratoriums which preceded the rezoning constituted a taking in that they were intended to prevent development of the land, thus reducing its market value in the event of condemnation. Finally, plaintiff pleads pendent state claims of breach of contract and misrepresentation by the City.

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331(a), and plaintiff alleges an amount in controversy in excess of $15,000. Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

Defendant's principal argument as to the failure to state a claim is that the zoning regulations were enacted pursuant to a comprehensive plan of community development and are therefore a proper exercise of the police power. There is no set formula, however, for determining where regulation ends and taking begins. It is essentially a question of reasonableness. Goldblatt v. Hempstead, 369 U.S. 590, 594–595, 82 S. Ct. 987, 8 L.Ed.2d 130 (1962). The determination of reasonableness is a factual one encompassing the interests of the public, the appropriateness of the means, and the oppressiveness of the action. Such a determination is inappropriate in a motion to dismiss. Assuming the truth of the allegations stated above, as the Court must in a motion to dismiss, the question is simply whether the plaintiff has stated facts which, if proved, would entitle her to relief. Jenkins v. McKeithen, 395 U.S. 411, 421–422, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969). Since plaintiff alleges that the

regulation is arbitrary and capricious and that it allows no reasonable use of plaintiff's property, her burden has been met.[1]

Similarly, the plaintiff has alleged sufficient facts to overcome a motion to dismiss her claim that the moratoriums so restricted the use of her land that they amounted to inverse condemnation. *See* Peacock v. County of Sacramento, 271 Cal.App.2d 845, 859–860, 77 Cal. Rptr. 391, 401–402 (1969). Plaintiff also alleges sufficient facts to support the conditions required for an equitable estoppel against a municipality. *See* City of San Marino v. Roman Catholic Archbishop of L.A., 180 Cal.App.2d 657, 676–677, 4 Cal.Rptr. 547, 559–560, cert. denied, 364 U.S. 909, 81 S.Ct. 272, 5 L. Ed.2d 224 (1960).

■ As to the lack of subject matter jurisdiction in this Court, defendant makes two arguments. First, it urges the Court to refuse to exercise jurisdiction because of plaintiff's failure to exhaust available administrative remedies. Plaintiff has, however, made a claim for inverse condemnation in accordance with California Government Code § 905. The only other remedy referred to by defendant is plaintiff's failure to apply for a variance. It is highly improbable that a variance would, or legally could, be granted where as much land as here is involved (291 acres) and where develop-

ment would be completely contrary to the goal of preserving the land in its natural or near natural state. The Court will not require such a useless course. *See* Retana v. Apartment, Motel, Hotel & El. Op. U., Loc. No. 14, 453 F.2d 1018, 1027 (9 Cir. 1972).[2]

Defendant's second jurisdictional contention, that an action will not lie against a municipality under 28 U.S.C. § 1331,[3] was briefed by the parties after being raised by the Court. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961) and City of Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) held that there can be no cause of action against a municipality under 42 U.S.C. § 1983 [4] and 28 U.S.C. § 1343 [5] because a municipality is not a "person" within the meaning of that term in § 1983. The question arises whether these holdings bar a claim where $10,000 or more is in controversy and jurisdiction is asserted under § 1331. In Payne v. Mertens, 343 F.Supp. 1355, 1358 (N.D.Cal.1972), this Court dismissed a claim against a municipality under § 1331 saying that finding municipal liability would "vitiate the Congressional mandate of 42 U.S.C. § 1983." The sole authority presented there by counsel for finding jurisdiction was Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), in which

---

1. While the legislative determination may control in a case where there is a debatable question as to the reasonableness of the exercise of the police power, this issue is not presented here in ruling on defendant's motion to dismiss.

2. Damico v. California, 389 U.S. 416, 88 S. Ct. 526, 19 L.Ed.2d 647 (1967), held that exhaustion of administrative remedies not required in a suit brought under 42 U.S.C. § 1983. While this action will not lie under § 1983 because the suit is against a municipality, it is a suit for deprivation of constitutional rights and the same rationale would apply. *See also* Gibson v. Berryhill, 411 U. S. 564, 572–575, 581, 93 S.Ct. 1689, 36 L. Ed.2d 488 (Marshall, J., concurring) (1973).

3. 28 U.S.C. § 1331(a) reads: "The district courts shall have original jurisdiction of all civil actions wherein the matter in contro-

versy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

4. 42 U.S.C. § 1983 reads, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

5. 28 U.S.C. § 1343 is invoked with 42 U.S.C. § 1983 because § 1983, a civil rights statute, provides a cause of action and § 1343 gives the federal courts jurisdiction to hear cases arising under the civil rights statutes.

the Court held that an action could be maintained against federal officers for an illegal search. *Bivens,* however, did not attempt to reconcile § 1983 and § 1331 because § 1983, which applies only to persons acting under color of state law, was wholly inapplicable. The instant case does present the question of the relationship of these two sections and thus requires a consideration of whether Congress, in passing the predecessor of § 1331 (Act of March 3, 1875, ch. 137, § 1, 18 Stat. 470), intended to allow jurisdiction over municipalities for claims arising under the Constitution when it had specifically refused to allow such claims four years before in passing § 1983 (Act of April 20, 1871, ch. 22, § 1, 17 Stat. 13).

■ Although jurisdiction in Monroe v. Pape was asserted in the district court under 28 U.S.C. § 1331 as well as under 42 U.S.C. § 1983 and 28 U.S.C. § 1343, petitioner inexplicably relied solely upon §§ 1983 and 1343 on appeal to the Supreme Court. While the Court held that Congress had specifically intended that municipalities were not within the reach of § 1983, *Monroe, supra,* at 191 of 365 U.S., 81 S.Ct. 473, it did not have before it the question of jurisdiction under § 1331. If jurisdiction will lie under § 1331 in a case such as this one, the application of the *Monroe* bar on suits against municipalities is limited to those cases where less than $10,000 is in controversy. What appears to be the broad substantive significance of *Monroe* is

then reduced, in many cases, to a mere pleading rule.[6]

In City of Kenosha v. Bruno, *supra,* the Court reaffirmed the holding in *Monroe,* and, again, jurisdiction had been asserted under § 1331 as well as under §§ 1983 and 1343. The Court did not decide whether jurisdiction would lie under § 1331, however, because the record did not establish the required $10,000 amount in controversy: "Since * * * no stipulation as to the amount in controversy was filed, we cannot say on this state of the record whether or not jurisdiction over the complaints was affirmatively established." 412 U.S. at 514, 93 S.Ct. at 2227. While the Court did not deal with this issue directly, the only fair reading of the opinion is that the Court assumed that had the amount in controversy requirement been met, jurisdiction would lie. Indeed, in his concurring opinion, with which Justice Marshall joined, Justice Brennan specifically stated, "[i]f appellees can prove their allegation that at least $10,000 is in controversy, then § 1331 jurisdiction is available * * *." 412 U.S. at 516, 93 S.Ct. at 2228.[7]

■■ Examination of the legislative histories of §§ 1983 and 1331 suggests that the bar against suing a municipality under § 1983 should not be read into § 1331. The legislative history of § 1983 reviewed by the Court in *Monroe* shows that the absence of a required amount in controversy was one of the concerns voiced by the act's opponents.

**6.** See, for example, Moor v. County of Alameda, 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed. 2d 596 (1973), where two plaintiffs sued for deprivation of their constitutional rights to recover damages for injuries allegedly suffered when an Alameda County deputy sheriff wrongfully discharged a shotgun while engaged in quelling a civil disturbance. Both plaintiffs Moor and Rundle asserted jurisdiction against the county under 28 U.S.C. § 1343 (for the claim arising under 42 U.S.C. § 1983 and 42 U.S.C. § 1988); plaintiff Moor also alleged diversity jurisdiction under 28 U.S.C. § 1332. No claim was made under § 1331. The Supreme Court affirmed the dismissal of the claims arising under § 1343,

citing *Monroe,* but held that diversity jurisdiction would lie under § 1332. Since § 1332 requires the same amount in controversy as does § 1331, it seems it would have been the better course for plaintiffs to have included a claim under § 1331 as well.

**7.** *See, e. g.,* Creel v. City of Atlanta, Georgia, 399 F.2d 777 (5 Cir. 1968); Miller v. County of Los Angeles, 341 F.2d 964, 967 (9 Cir. 1965); Foster v. Herley, 330 F.2d 87, 90–91 (6 Cir. 1964); Amen v. City of Dearborn, 363 F.Supp. 1267, 1270 (E.D. Mich.1973); Eleopoulos v. Richmond Redevelopment Agency, 351 F.Supp. 63, 64 (N. D.Cal.1972).

Senator Thurman of Ohio spoke in opposition to the act:

"It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United States, to bring an action against the wrong-doer in the Federal courts, and that without any limit whatsoever as to the amount in controversy. The deprivation may be of the slightest conceivable character * * * and yet by this section jurisdiction of that civil action is given to the Federal courts instead of its being prosecuted as now in the courts of the States." *Monroe, supra,* at 179–180 of 365 U.S., at 480 of 81 S.Ct.

When the predecessor of § 1331 was passed four years later, however, it included the requirement of a stated amount in controversy.[8] The passage of § 1331 was also motivated by very different considerations than those to which § 1983 was a response. § 1983 was an effort by the Congress to provide a *forum* and a *remedy* for those whose rights were being violated but who could get no relief in the courts or agencies of their states. *Monroe, supra,* at 180, 81 S.Ct. 473. Amendments were offered extending liability specifically to include cities and counties, but many members of Congress were unwilling to extend liability to municipalities, " 'the mere instrumentality for the administration of state law.' " *Monroe, supra,* at 190, 81 S.Ct. at 485. As finally passed, the act provided redress only against the persons who were depriving .others of their rights. The Act of March 3, 1875, the predecessor of § 1331, on the other hand, was the culmination of efforts dating back to the first Congress to give general federal question jurisdiction to the federal judiciary. *See* Chadbourn & Levin, Original Jurisdiction of Federal Questions, 90 U.Pa.L.Rev. 639, 639–645 (1942). This revolutionary step in strengthening the federal government against the states was made with no substantive debate (Chadbourn & Levin,

*supra,* at 643). The record is silent as to whether Congress meant to make municipalities liable for acts of their agents which violate federal law. While it may be argued that Congress assumed that suits in federal court against municipalities would be unconstitutional, as had recently been vigorously argued in the debates over the passage of § 1983 (*See* Moor v. County of Alameda, *supra,* at 708 of 411 U.S., 93 S.Ct. 1785), it is not the role of this Court to read in such a limitation in the absence of any legislative history. Moreover, in view of the assumption in City of Kenosha v. Bruno, *supra,* that such jurisdiction depends only upon a clear showing of the requisite amount in controversy, this Court finds that it has jurisdiction over the City of Palo Alto under § 1331.

Accordingly, it is hereby ordered that defendant's motion to dismiss is denied.

---

8. The required amount in controversy was originally $500.