**M. J. BROCK & SONS, INC., a Delaware Corporation, Plaintiff,**

v.

**CITY OF DAVIS, a Municipal Corporation, et al., Defendants.**

**No. CS–74–364 SW.**

United States District Court,
N. D. California.

Aug. 26, 1975.

---

William H. Collard, Wade R. Thompson, Friedman, Collard & Kauffman, Sacramento, Cal., for plaintiff.

Laurence L. Angelo, Fitzwilliam, Memering, Stumbos & DeMers, Sacramento, Cal., for defendants.

Ronald A. Zumbrun, Donald M. Pach, Thomas E. Hookano, Pacific Legal Foundation, Sacramento, Cal., for amicus curiae.

## MEMORANDUM OF OPINION AND ORDER

SPENCER WILLIAMS, District Judge.

### I. STATEMENT OF FACTS

This case arises from a dispute over the use of 75 acres of land owned by the plaintiff within the City of Davis, California. The plaintiff, M. J. Brock & Sons, Inc., has alleged that the defendants City, City Council, Planning Commission, Planning Director, and individuals associated with these governmental units have engaged in a series of acts which collectively have denied plaintiff of the lawful use of its land under federal law so as to constitute a taking in violation of the Fifth and Fourteenth Amendments; a denial of the due process, equal protection, and privileges and immunities clauses; and a violation of plaintiff's civil rights under 42 U.S.C. §§ 1983, 1985. Plaintiff also alleges state law violations relating to misrepresentation, breach of contract, and inverse condemnation. Jurisdiction is claimed to rest on 28 U.S.C. §§ 1331, 1343. These violations are based on the following acts of the defendants, as alleged by plaintiff:

The 1958 General Plan of the City of Davis proposed that the area including the land in dispute here would be put to an urban use. The plan assumed that Davis would grow in population and that annexation of contiguous areas should be encouraged for development. In 1965 the City sought consent to annex the property from C. H. Buckley, plaintiff's predecessor in interest. The Brock corporation became the owner on July 12, 1971. Buckley and the City agreed that the property would be zoned so as to allow Buckley to develop the property according to the plan. Annexation took place in 1966, and the property was rezoned as agreed. In 1967, Buckley entered into a sewage connection agreement with the City which included an advance by Buckley of $8,000 as a credit against future sewage connection fees. The City did not construct the sewage facility.

Prior to any improvements on the property, the present plaintiff, M. J. Brock & Sons, Inc., commenced negotiations for the purchase of the property. The plaintiff met with city representatives who ratified and affirmed all of

the prior acts in connection with the property and C. H. Buckley.

In 1971, the property was rezoned to a "PD" status which allowed for a residential use of greater density than before. At the City's request, the plaintiff incurred substantial expenses in studying and resolving drainage problems existing on the subject property. Subsequent to this plaintiff purchased the property and proceedings were initiated by the city whereby a drainage district was established and bonds were levied against the subject property in the amount of $95,410.77. Construction of the drainage facilities were subsequently completed at a total cost of $209,235.07. The annual payment on the bond indebtedness is several thousand dollars.

In 1972, the plaintiff requested final approval of its application for development, but the Planning Commission failed to review the plans and the City Council approved the actions of the Commission on appeal. The City Council later directed the Planning Commission to review the development plan and again the Commission refused.

On April 9, 1973, the City Council changed the zoning classification of the property to an "S" interim study district, limiting all uses to agricultural purposes for a period of four months. In August, 1973, the City Council extended the interim zoning through December, 1973. Plaintiff's requests for processing its application for a "PD" development were again refused. In April, 1974, the City Council again adopted the "S" zone. Subsequently, the City adopted a general plan which prohibits construction on the subject property until 1990, unless a permit for non-agricultural development is obtained.

Plaintiff seeks monetary damages in the amount of $2,229,000.00, alleged to be the fair market value of the property.

The defendants have brought a motion requesting abstention of this Court, and a motion to dismiss or in the alternative for a more definite statement.

■ Before discussing these motions, a pleading error must be dealt with. "John Doe" defendants are not cognizable in federal courts. *Tolefree v. Ritz,* 382 F.2d 566 (9th Cir. 1967); *Wiltsie v. California Department of Corrections,* 406 F.2d 515, 518 (9th Cir. 1968). Accordingly, "DOE ONE through DOE ONE-HUNDRED" are dismissed as defendants from plaintiff's complaint.

## II. MOTION TO ABSTAIN

■■ The defendants have requested that this Court abstain from exercising federal jurisdiction in this case. There is no valid reason to do so. Abstention is appropriate where litigation in a state court might obviate the need for a decision on federal constitutional grounds. *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Lerner v. Town of Islip,* 272 F.Supp. 664 (E.D. N.Y.1967). In the instant case, a determination at the state level of the state claims of misrepresentation, breach of contract, and inverse condemnation, respectively alleged as the fifth, sixth, and seventh causes of action in the complaint, would not eliminate the question of whether the defendants' acts constitute a taking of property without just compensation under the Fifth and Fourteenth Amendments, as raised by the plaintiff's first cause of action. A federal court cannot channel federal constitutional issues to state courts merely to avoid a federal decision. *Zwickler v. Koota,* 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

■ Abstention is also appropriate for the avoidance of unnecessary interference with state regulatory schemes, based on the premise that federal intervention would lead to conflicts in the federal-state relationship. *Burford v. Sun Oil,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). It is true that a local land use regulatory scheme is the subject of concern here, but the exercise of federal court jurisdiction by no means constitutes unnecessary interference be-

cause the federal questions of taking, deprivation of civil rights and conspiracy to abrogate plaintiff's civil rights are at the center of this suit.

Defendants cite as compelling authority *Rancho Palos Verdes Corporation v. City of Laguna Beach,* 390 F.Supp. 1004 (C.D.Cal.1975). This was a civil rights action for injunctive relief and/or damages under 42 U.S.C. §§ 1983, 1985 wherein the plaintiff charged the city and some of its governmental bodies and employees with conspiracy to deprive plaintiff of the use of its undeveloped real property in violation of the due process and equal protection clauses of the Fifth and Fourteenth Amendments. The complaint also contained pendent state claims for breach of contract and inverse condemnation. The District Court abstained, finding that the federal courts ought not to intervene in California land use planning unless faced with no alternative and that the federal issues might be avoided by a definitive ruling on the state issues. The *Rancho* decision does not explain the nature of plaintiff's Fifth Amendment claim in much detail. Exactly why the Court thought the federal claims would be resolved by a determination of the state claims is not clear; consequently, the opinion is of little help. As noted above, the question of whether there has been an unconstitutional taking under the Fifth Amendment in the instant action would not be answered by a resolution of the state claims; therefore, abstention is inappropriate here because the controversy would not be terminated. Accordingly, the motion to abstain is denied.

### III. MOTION TO DISMISS

The defendants have brought a motion to dismiss each cause of action alleged by plaintiff for failure to state a claim upon which relief can be granted.

### A.

Plaintiff's initial cause of action alleges that the defendants' acts consti-

tuted a taking of property without just compensation in violation of the United States Constitution. Defendants contend that the city ordinances designating plaintiff's property to be in an interim study zone which restricts its use to agricultural endeavors unless otherwise authorized by a special permit was "an attempt to meet the requirements of proper community planning."

A similar police power justification for rezoning was put forth by the defendant City of Palo Alto in *Dahl v. City of Palo Alto,* 372 F.Supp. 647 (N. D.Cal.1974). In that case, plaintiff alleged that she was induced by agents of the city to allow annexation of her unimproved real property in exchange for a promise that she would be permitted to develop her property under a residential zoning classification allowing a one-acre minimum lot size. Subsequent to annexation, and after plaintiff had been assessed for the installation of sewer and water facilities calculated on the basis of one dwelling per acre, the property was reclassified with residential uses restricted to a ten-acre minimum lot size.

In denying the defendant city's motion to dismiss, the District Court in *Dahl* stated that deciding where regulation ends and taking begins is essentially a question of reasonableness, citing *Goldblatt v. Hempstead,* 369 U.S. 590, 594–95, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). The Court went on to note:

> The determination of reasonableness is a factual one encompassing the interests of the public, the appropriateness of the means, and the oppressiveness of the action. Such a determination is inappropriate in a motion to dismiss.

*Dahl v. City of Palo Alto, supra* at 648.

■■ For the purposes of a motion to dismiss, the material allegations are taken as admitted, and the complaint should not be dismissed unless it appears that the claimant could prove no set of facts in support of his claim which would entitle him to relief. *Jenkins v.*

*McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1968). The question, then, is whether plaintiff has stated facts which, if proved, would entitle it to relief. Since plaintiff alleges that the defendants have engaged in a series of acts, including the limitation of present use of the property to agricultural uses, which have rendered the property substantially valueless so as to constitute an unlawful taking, plaintiff has met its burden. *See Dahl, supra* at 648–49.

Thus, the defendants' motion to dismiss is denied as to the first count.

However, this Court feels compelled to note that plaintiff may experience grave difficulties in attempting to prevail on the issue of taking on a motion for summary judgment.

In *Steel Hill Development, Inc. v. Town of Sanbornton,* 335 F.Supp. 947 (D.N.H.1971), plaintiff's property was rezoned from a "General Residential and Agricultural District," with a required minimum lot size of 35,000 square feet, to a "Forest Conservation District" which required a minimum lot size of 261,360 square feet. This occurred after plaintiff had made heavy expenditures for renovations and engineering reports in reliance on previous zoning. It was held that a claim was stated and the dismissal motion was denied. But the District Court, in the subsequent declaratory judgment proceeding on the merits, found no taking to have occurred. The District Court noted that

> [a]n application of zoning which even substantially reduces the value of land, but does not cause a total loss of profitable use is normally held as not confiscatory.

338 F.Supp. 301, 307. In that case, as here, the land could still be used for "general farming and agricultural purposes." *Id.* The First Circuit Court of Appeals agreed on review, stating that the estimated worth of the property, had

the developer's original plans to develop 500 to 515 seasonal family units been approved, was irrelevant because the land had not been rendered valueless. *Steel Hill Development, Inc. v. Town of Sanbornton,* 469 F.2d 956, 963 (1st Cir. 1972), citing, *Hadacheck v. Sebastian,* 239 U.S. 394, 36 S.Ct. 143, 60 L.Ed. 348 (1915).

■ Thus, while this Court is compelled to deny defendants' motion to dismiss, the federal law clearly does not favor plaintiff's claim of a taking, the merits of which are more appropriately considered on a motion for summary judgment.

#### B.

The second, third, and fourth causes of action are civil rights claims brought under 42 U.S.C. §§ 1983, 1985. It is appropriate to divide discussion of them into two parts, dealing first with the defendant governmental units and then considering the named individual members of the city bodies.

#### 1.

■ With respect to the City of Davis, a municipality is not a "person" within the meaning of Section 1983. *Moor v. County of Alameda,* 411 U.S. 693, 700, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1972), citing, *Monroe v. Pape,* 365 U.S. 167, 187–91, 81 S.Ct. 473, 5 L.Ed.2d 1492 (1960).[1] Similarly, the conspiracy claim under 42 U.S.C. § 1985 is unavailable to plaintiff insofar as it seeks to sue the city. *Bosely v. City of Euclid,* 496 F.2d 193 (6th Cir. 1974); *Black Brothers Combined of City of Richmond,* 386 F.Supp. 147 (E.D.Va.1974); *Arunga v. Weldon,* 469 F.2d 675 (9th Cir. 1972). Because the City of Davis is not a "person" subject to suit under the Civil Rights Act, its component agencies likewise cannot be sued under the Act for they are but political subdivi-

---

1. Although only money damages are sought here, cities are also outside the ambit of § 1983 for purposes of equitable relief. *City of*

*Kenosha v. Bruno,* 412 U.S. 507, 511–13, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1972).

sions of the municipality. See, e. g., *Amen v. City of Dearborn,* 363 F.Supp. 1267 (E.D.Mich., S.D.1973). Therefore, the second, third, and fourth causes of action are dismissed against the City of Davis, the City Council of the City of Davis, and the City Planning Commission of the City of Davis.

### 2.

■ Having disposed of the civil rights claims against the governmental bodies, the named individual defendants must be considered. Of initial importance is the fact that city officials, unlike a municipality, are "persons" under 42 U.S.C. § 1983, and a District Court has jurisdiction over such individuals under 28 U.S.C. § 1343. *Ybarra v. City of Town of Los Altos Hills,* 503 F.2d 250, 253 (9th Cir. 1974).

The named city officials in this action are being used both in their official and individual capacities. There exists judicial disparity on the question of whether such persons may be sued under the Civil Rights Act in their official capacities. *Bennett v. Gravelle,* 323 F.Supp. 203, 210–11 (D.Maryland 1971) held that damages could not be assessed against commissioners of a sanitary district who were sued in their official capacities, on the theory that in acting in such capacities they were extensions of the municipal agency and therefore not "persons" within the meaning of Section 1983. Accord, *Taliaferro v. State Council of Higher Education,* 372 F. Supp. 1378 (E.D.Va.1974). A contrary decision from the Fourth Circuit is *Black Brothers Combined of City of Richmond, supra,* interpreting *Harper v. Kloster,* 486 F.2d 1134 (4th Cir. 1973). However, this question need not be resolved here: the named officials of the City of Davis are being sued in their individual as well as official capacities and therefore they are proper defendants. Further briefing on official and individual capacity may be required at a later date.

As proper defendants, their immunity from liability for damages under Sections 1983 and 1985 must be examined. The latest authority on the subject of immunity of government officials is *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The United States Supreme Court, relying on its prior decisions in *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed.2d 1019 (1951); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), held that common law tradition and public policy accord public school officials a qualified good faith immunity in Section 1983 actions. The Court found the standard of good faith to contain both subjective and objective elements, stating that a school official is not immune from liability for damages

if he knew or reasonably should have known that the action he took within the sphere of his official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.

95 S.Ct. at 1001.

■ The same qualified good faith immunity should apply here. Like the school board members in *Wood,* the city councilmen, planning commissioners, and the planning director are public officials who must make discretionary decisions affecting the lives of the people they govern. There must be a degree of immunity if their schools or cities are to function effectively. See *Wood, supra,* 95 S.Ct. 992. The alternative would be a reluctance to make important but politically controversial decisions, such as the zoning changes before this Court at present.

In assessing the propriety of plaintiff's claims, it must be borne in mind that at this stage all doubts must be resolved in favor of the plaintiff. It is en-

titled not only to the presumption of truth as to facts pleaded, but also to any favorable inferences arising therefrom. *Taliaferro, supra* at 1385. Whether the named individual defendants involved here all acted in good faith as defined in *Wood v. Strickland* has not been shown in any definitive manner; consequently, dismissal of any or all of them would be premature at this time. The motion to dismiss the second, third, and fourth causes of action is denied with respect to the named individual defendants.

### C.

 Because the plaintiff has stated a federal taking claim as well as a Civil Rights Act cause of action as defined above, the state claims alleged in the fifth, sixth, and seventh causes of action are still pendent. Substantial expenditures may have been made by plaintiff in reliance on the alleged agreements with the city. Should it result that these agreements are valid and binding, plaintiff may be able to recover on them here or in state court even if no taking or Civil Rights Act violations are found. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Although zoning itself is not a contractual act, a municipality should not be allowed to avoid responsibility for breach of specific land use agreements entered into with private parties even though the breach occurred through the process of zoning changes.

### IV. MOTION FOR MORE DEFINITE STATEMENT

 Motions under Rule 12(e) can have a dilatory effect. The progression of this case has been slow due in part to the numerous supplemental and *amicus* briefs that have been submitted, reflecting the complexity of this matter. Because of this, and the fact that the plaintiff's pleading is not so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the defendants' alternative motion for a more definite statement is denied.

IT IS HEREBY ORDERED that:

1. The defendants' motion to abstain is denied.

2. The motion to dismiss is granted with respect to the second, third, and fourth causes of action as they relate to the City of Davis, the City Council of the City of Davis, and the City Planning Commission of the City of Davis.

3. The motion to dismiss is denied with respect to all other causes of action and parties.

4. The motion for a more definite statement is denied.