John H. FOX

v.

A. W. CASTLE, III, Individually and as Chief of the Carroll-Franklin Township Police Department, Samuel A. Hill, Individually and as Justice of the Peace for Magisterial District No. 3–10 of the Commonwealth of Pennsylvania, Carroll Township and Franklin Township.

Civ. No. 75–1542.

United States District Court,
M. D. Pennsylvania.

March 7, 1977.

Robert W. Barton, Smith B. Gephart, Harrisburg, Pa., for plaintiff.

Byron H. Lecates, Eugene R. Campbell, Russell F. Griest, York, Pa., Jonathan Vipond, III, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

In this action plaintiff seeks damages in excess of $10,000 from defendants A. W. Castle, III, Chief of the Carroll-Franklin Township Police Department, Samuel A. Hill, Justice of the Peace for Magisterial District No. 3–10, and Carroll Township and Franklin Township, two Pennsylvania municipal corporations. Before the Court at this time are the motions of defendants Hill, Carroll Township and Franklin Township [1] for judgment on the pleadings.[2]

Plaintiff alleges the following facts: In August of 1974 plaintiff filed assault charges against one William Holder. On August 8, he was called to the Carroll-Franklin Township Police Department to sign some papers relating to these charges. When he arrived at the station he was informed by an Officer Yost and defendant A. W. Castle that he was under arrest for solicitation to commit murder. He was then fingerprinted, photographed, and committed to York County Prison in lieu of $100,000 bail set by defendant Magistrate Samuel A. Hill.

Plaintiff also alleges that, at a subsequent preliminary hearing before defendant Hill, William Holder, Carolyn Holder, and Larry Shaulitis testified that plaintiff had either offered them money to kill defendant Castle or that they had overheard such an offer to another person; that this testimony was untrue; and that it was coerced by defendants Castle and Hill. He further alleges that defendant Hill then bound the case over to the Grand Jury which, after hearing perjured testimony by defendant Castle, indicted him on December 9.

Finally, plaintiff alleges that Mr. and Mrs. Holder and Mr. Shaulitis recanted the testimony they presented at the preliminary hearing and because of this, the District Attorney dismissed the charges against him. Plaintiff alleges that he spent a total of 12 days in jail as a result of this incident.

### I.

Defendant Magistrate Samuel Hill has moved to dismiss on the grounds that he is a judicial officer and therefore immune from suit.

It is a settled rule that a judge is not liable for acts performed in a judicial capacity even though his acts are in excess of his jurisdiction and done maliciously, corruptly or arbitrarily. *Pierson v. Ray,* 386 U.S. 547, 553–54, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Justices of the Peace, it is also well established, fall within the ambit of this doctrine. *See Pritt v. Johnson,* 264 F.Supp. 167, 170 (M.D.Pa.1967); *Hohensee v. Hart,* Civil No. 76–464 (M.D.Pa., June 22, 1976).

The purpose of the judicial immunity doctrine is to insure that judges be free "to exercise their functions with independence and without fear of consequences." *Pierson v. Ray,* 386 U.S. at 554, 87 S.Ct. at 1218. Thus, in determining whether judi-

---

**1.** Defendant A. W. Castle, III, did not file a motion.

**2.** The motions were filed as motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules

of Civil Procedure but since the parties have filed answers, the Court will treat the motions as motions for judgment on the pleadings pursuant to Rule 12(c).

cial immunity applies to a particular activity, the proper approach is to consider the precise function involved and to determine whether the threat of tort liability in the performance of that function would be likely to inhibit principled and fearless decision-making by the judiciary. *See Gregory v. Thompson,* 500 F.2d 59 (9th Cir. 1974); *McCray v. Maryland,* 456 F.2d 1 (4th Cir. 1972).

■ In the present case the functions involved are a judicial officer's power to set bail and make a probable cause determination at a preliminary hearing. Since it is manifest that the threat of tort liability in the performance of these duties would seriously cripple the effective administration of the judicial process, the Court concludes that judicial immunity attaches to the alleged acts of defendant Hill.

## II.

■ Defendants Carroll and Franklin Townships have moved to dismiss on the ground that, as municipalities, they are not subject to suit under 42 U.S.C.A. § 1983 (1974). Plaintiff does not dispute this position but argues that the Court has jurisdiction over the matter through 28 U.S.C.A. 1331 (1966), which provides in part:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that an action for damages lay against federal officers alleged to have violated petitioners' Fourth Amendment rights against unreasonable searches and seizures, and that federal jurisdiction existed under § 1331 where there was more than $10,000 in controversy. The question now before the Court is

whether such an action for damages may lie against a municipality.

Several strong arguments have been raised in favor of this position. It has been argued that it is anomalous to assert that injunctive relief [3] is available against a municipality directly under the Constitution, while damages are not. *See Patterson v. Ramsey,* 413 F.Supp. 523, 528 (D.Md.1976). It has also been argued that the imposition of such a remedy is appropriate because federal courts are the natural forum for the protection of federal rights. *Id.* Finally, it has been asserted that the extension of liability to municipalities for damages is desirable from the standpoint of deterring constitutional violations because the "presently available remedies such as injunctive relief, and the Fourth Amendment Exclusionary rule, as well as the damage remedies against officials, have been largely ineffective in inducing them to stop violating constitutional rights." *See* Note, Damage Remedies Against Municipalities for Constitutional Violations, 89 Harv.L.Rev. 922, 927 (1976).

The most common objection to the framing of a Fourth Amendment cause of action for damages against a municipality is that Congress exempted municipalities from liability under § 1983, which is the primary vehicle for enforcing that amendment. Note, Municipal Liability in Damages for Violations of Constitutional Rights—Fashioning a Cause of Action Directly from the Constitution, 7 Conn.L.Rev. 552, 568 (1976). It is argued that Congress, in passing the predecessor of § 1331,[4] should not be presumed to intend jurisdiction over municipalities when it had specifically refused to allow such claims four years earlier in enacting § 1983.[5] *See Perzonowski v. Salvio,* 369 F.Supp. 223, 230–31 (D.Conn.1974).

In considering the relationship of § 1983 and § 1331, it must be noted that, though they both have their origin in the Reconstruction Congress of the early 1870s, they were motivated by different considerations.

---

**3.** *See Kenosha v. Bruno,* 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973).

**4.** Act of March 3, 1875, Ch. 137 § 1, 18 Stat. 470.

**5.** Act of April 20, 1871, Ch. 22 § 1, 17 Stat. 13.

See *Dahl v. Palo Alto,* 372 F.Supp. 647, 651 (N.D.Cal.1973). Section 1983 was enacted to provide a forum for the protection of those whose constitutional rights were being violated but who could not get any relief in the state courts. As initially proposed, it provided that the local government units in which the Fourteenth Amendment violation occurred be liable in damages for the harm suffered. The subsequent rejection of this proposal and the related legislative history led the Supreme Court to conclude that Congress did not intend to make municipalities liable under Section 1983. See *Monroe v. Pape,* 365 U.S. 167, 187–192, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). Section 1331, on the other hand, is not an outgrowth specifically of the Fourteenth Amendment but is the culmination of efforts going back to the first Congress to provide federal question jurisdiction. See *Dahl v. Palo Alto,* 372 F.Supp. at 651, *citing* Chadborn and Levin, Original Jurisdiction of Federal Questions, 90 U.Pa.L.Rev. 689–45 (1942). This, coupled with the fact that there is no statutory language or legislative history to indicate any congressional intent to impose § 1983 restrictions on federal question jurisdiction, clearly leads to the conclusion that § 1331 provides a jurisdictional basis for this action. See *Williams v. Brown,* 398 F.Supp. 155, 159–160 (N.D.Ill. 1975); *Dahl v. Palo Alto,* 372 F.Supp. at 649–51.

An examination of the relevant authorities also leads to the conclusion that § 1331 jurisdiction exists in this case. In *Skehan v. Board of Trustees of Bloomsburg State College,* 501 F.2d 31 (3d Cir. 1974), the plaintiff challenged his discharge from the faculty of a state college and sought back pay. Jurisdiction was asserted both under § 1331 and under 28 U.S.C.A. § 1343 (1976), which provides jurisdiction for § 1983 claims. The court expressed some doubt as to whether the College was a person for purposes of § 1983 but said that "because the requisite jurisdictional amount for § 1331 is pleaded the fact that the College is not a person within the meaning of 42 U.S.C. § 1983 is not significant." *Skehan v. Board of Trustees of Bloomsburg State Teachers College,* 501 F.2d at 44.

A number of District Courts have likewise determined that an action for damages under § 1331 may lie against a municipality for violations of the Fourteenth Amendment. See, e. g., *Behan v. City of Dover,* 419 F.Supp. 562 (D.Del.1976); *Gay Lib v. University of Missouri,* 416 F.Supp. 1350 (W.D.Missouri 1976); *Clark v. State of Illinois,* 415 F.Supp. 149 (N.D.Ill.1976) (Will, Jr.); *Collum v. Yurkovich,* 409 F.Supp. 557 (N.D.Ill.1975) (Austin, J.); *Williams v. Brown,* 398 F.Supp. 155 (N.D.Ill.1975) (Marshall, Jr.); *Dahl v. Palo Alto,* 372 F.Supp. 647 (N.D.Cal.1974); *Maybanks v. Ingram,* 378 F.Supp. 913 (E.D.Pa.1974). But see *Perzanowski v. Salvio,* 369 F.Supp. 223 (D.Conn.1974); *Payne v. Mertens,* 343 F.Supp. 1355 (N.D.Cal.1972).

On the basis of the foregoing, therefore, the motions of the defendants Carroll and Franklin Townships will be denied.