Cyril G. BARBACCIA, Lena M. Barbaccia, Louis P. Barbaccia, Eva M. Barbaccia, Albert B. Smith, Isabel A. Smith, William J. Mabie, and Inez Mabie, Plaintiffs,

v.

The COUNTY OF SANTA CLARA, the City of San Jose, Sig Sanchez, Dominic Cortese, Dan McCorquodale, Rodney Diridon and Geraldine Steinberg, Individually and as members of the Board of Supervisors of the County of Santa Clara, Janet Gray Hayes, Joseph A. Colla, Lawrence R. Pegram, Roy B. Naylor, Susanne B. Wilson, Jim Self, and Alfredo Garza, Jr., Individually and as members of the City Council of San Jose, Defendants.

Civ. No. C–76–1182 SW.

United States District Court, N. D. California.

May 10, 1978.

Selby Brown, Jr., County Counsel, Allan R. Saxe, Richard K. Abdalah, Deputy County Counsels, San Jose, Cal., for County defendants.

Evelle J. Younger, Atty. Gen. of the State of California, Larry C. King, Deputy Atty. Gen., Sacramento, Cal., for People of the State of California.

Goldstein, Barceloux & Goldstein, San Francisco, Cal., Watson, Tedesco, Sanguinetti & Alphonse, Campbell, Cal., for plaintiffs.

Peter G. Stone, City Atty., Richard K. Karren, Asst. City Atty., Harry Kevorkian, Div. Chief Atty., Robert W. Hurley, Deputy City Atty., William M. Siegel, County Counsel, James T. Rohner, Allan R. Saxe, Deputy County Counsels, San Jose, Cal., for defendants.

## MEMORANDUM OF OPINION

SPENCER WILLIAMS, District Judge.

Plaintiffs filed this action in June of 1976 alleging, inter alia, that the City of San Jose and the County of Santa Clara, as well as certain city and county officials, had violated plaintiffs' constitutional rights by taking their property without just compensation and otherwise denying them due process and equal protection of the law. Shortly after the complaint was filed all the defendants moved the court to dismiss or abstain. A preliminary hearing was held on November 19, 1976 at which time the court continued the motions for the purpose of allowing the plaintiffs the opportunity to process some application or seek some land use approval from the city and county defendants. This temporary and informal abstention proved salutary. On August 16, 1977 the Board of Supervisors of Santa Clara County acted upon plaintiffs' application and rezoned the property from R1–1AC (one residence per 10 acres) to R1–6 (one residence per 6,000 square feet). At a second hearing on defendants' motions, held November 18, 1977, the court dismissed the county defendants because the county had voluntarily provided the relief which plaintiffs sought. At the same time the court took under advisement the city defendants' motion to dismiss or abstain. Having carefully considered the parties arguments the court denies the motion with minor exceptions set forth below.

*FACTUAL BACKGROUND*

Plaintiffs are owners of 98.8 acres of land in Santa Clara County located to the west of Cottle Boulevard and to the south of the proposed West Valley Freeway. The property, which plaintiffs have owned since the 1940's, became surrounded by the City of San Jose in recent years as the city expanded and annexed adjoining land. Recognizing the city's interest, in, and probable acquisition of, this island in its midst, the county relinquished to the city much of its control over the property. The county retained some regulatory authority, but local

agency formation agreements and amended City Policies 61 and 62 brought the property within the city's designated area and sphere of influence and subjected it to city planning and developmental control. An important consequence of this dual control is that plaintiffs' land is included in the growth plans adopted by both entities, plans which at the present time express inconsistent visions of appropriate use. The county, at all times relevant herein, has designated the property for residential development. The city, on the other hand, designated the property for residential development at a density of 5 + units per acre prior to 1971 and then amended its general plan to designate the property as private recreational open space.

Plaintiffs first attempted to develop their property in 1966 when they submitted to the county a proposal for a light industrial park. The proposal was rejected on the ground that the land, like adjoining property, was best suited for eventual residential development. Presumably plaintiffs could have obtained approval from the city for annexation and residential development at this time since the city annexed surrounding property for such development throughout this period. No doubt hoping for greater appreciation in land values as the area grew, plaintiffs postponed development and built a golf course on the property at a cost in excess of one million dollars. The golf course produced modest profits for several years but is in financial trouble today, allegedly due to competition from city and county operated courses not subject to taxation. Plaintiffs contend that the presence of these public courses make profitable operation of their course impossible [1]. The golf course is operated by a tenant under a lease that nominally runs to 1986 but is terminable by the plaintiffs at an earlier date.

By 1972–1973 the combination of soaring land values and declining golf course revenues led plaintiffs to seek residential development of their property. While plaintiffs were proceeding with their development plans, a number of adjoining property owners allegedly began meeting with city officials in an effort to persuade the city to purchase the property so that the golf course might be preserved. Plaintiffs learned of these overtures and initiated direct negotiations with the city regarding public acquisition. During the course of these negotiations and discussions the city was urged to purchase the property or to put the question of purchase before the public in the May, 1975 bond election. The city failed to pursue either alternative, but agreed with the plaintiffs to jointly retain a real estate appraiser to value the property. The appraiser's report, received on July 23, 1975 set the value of the land at $4.4 million dollars based upon its residential and/or commercial value. According to the plaintiffs the city's interest in the acquisition dimmed markedly at this point.

Plaintiffs' development plans were equally unsuccessful. They submitted plans for a redevelopment entitled Oak Ridge Village which contemplated construction of detached, single family homes similar to those in the surrounding neighborhoods. The city's Environmental Commission found no reason to deny approval, but recommended public acquisition of the land as an alternative. The City Planning Commission also found the design unobjectionable. However, the commission recommended denial of the application in light of the 1971 amendment to the general plan calling for the preservation of the land as open space. On July 29, 1975, one week after the appraiser's report had been received, the San Jose City Council voted to reject plaintiffs' proposed development and denied pre-zoning for annexation. Neither plaintiffs nor their representatives were present at the council meeting allegedly because city officials deliberately misled them into believing the vote on their application would be taken at a later meeting. Apparently, the sole reason the city council denied the Oak

---

1. Whether the city might be subject to a federal antitrust cause of action is a question not discussed by the parties. See *City of Lafayette v.* *Louisiana Power & Light Co.,* —— U.S. ——, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978).

Ridge application was the desire to retain the land as a golf course or other use consistent with the open space designation in the general plan.

Subsequent to the filing of this lawsuit plaintiffs applied to the county for rezoning of their property from a one residence per 10 acre designation to a one residence per 6,000 square feet designation. The County Board of Supervisors granted the rezoning but noted that development of the property at this density could occur only if the plaintiffs were allowed access to the city sewer system. Plaintiffs allege that development at the lesser one unit per ten-acre density would be disallowed as well without city sewer hook-ups since the physical conditions of the property make development using septic tanks inappropriate. At the hearing on defendants' motion to dismiss, counsel for the city informed the court that the city is precluded by local ordinance from providing sewer hook-ups to residential users outside city limits.[2]

Chronicling the above course of events plaintiffs conclude they have been deprived of all profitable use of their land: the golf course cannot be operated in competition with public courses except at a loss; no other private recreational use can be conducted profitably on the property; and all residential development is barred absent city sewer hook-ups.

## MOTION TO ABSTAIN

Preliminarily defendants urge this court to decline to exercise its jurisdiction over this cause of action because it involves a traditional land use and zoning dispute. California's complex regulatory scheme of land use control should not be disrupted by federal intervention, defendants urge, where California courts are equally competent to adjudicate federal constitutional claims and more familiar with local zoning laws.

The policy considerations of comity and judicial economy upon which the abstention doctrine rests look to the potential for conflict in federal-state relations. This particular controversy does not presage a federal-state conflict arising from state court decisions which may substantially eliminate or minimize federal constitutional issues. *Railroad Comm'n v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1943). Neither does it promise insensitive and unnecessary disruption of a complex regulatory scheme. *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In short, abstention would be justified in this case only if it were appropriate in all California land use cases. A federal court cannot channel federal constitutional issues to state courts merely to avoid a federal decision, *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967), rather it is the obligation of a federal court to exercise its discretion in each case disavowing jurisdiction only where the potential for conflict in federal-state relations clearly outweighs the plaintiffs right to a federal trial. The unique factual circumstances of this case suggest that any decision by this court is not likely to have significant precedential value or upset any particular scheme of regulation. Therefore, defendants' motion to abstain is denied.

## MOTION TO DISMISS

The motion to dismiss pursuant to Fed.R. Civ.Pro. 12(b)(6) advances independent theories to demonstrate that the complaint

---

**2.** An issue which neither side has addressed directly in its pleadings involves plaintiffs' right to compel the city of San Jose to provide access to its sewers. If the city were so compelled, plaintiffs could presumably begin more profitable development of their property immediately.

The traditional rule is that a municipality may not be forced to extend its sewer lines to property lying outside its boundaries. However, several state courts have recently held that a city holding itself out as the sole provider of sewer services in a given locale will be considered a public utility and allowed to deny sewer hook-ups to property within its "service area" only for such utility-related reasons as lack of capacity. *See, e. g., Robinson v. City of Boulder*, 547 P.2d 228 (Colo.Sup.Ct.1976); *Mayor and Council of City of Dover v. Delmarva Enterprises, Inc.*, 301 A.2d 276 (Del.Sup.Ct. 1973).

fails to state a claim. Defendants' arguments—the facts alleged do not constitute a taking, the claims are barred for untimeliness, and recovery is precluded by immunities—are considered seriatim.

*Taking*

██ Defendants have moved to dismiss asserting there is no case or controversy because plaintiffs have failed to allege facts sufficient to state an unconstitutional taking. The gist of the complaint, defendants argue, is that the city (1) amended its general plan in 1971 designating plaintiffs' property as open space; (2) failed to adopt a pre-annexation zoning ordinance in 1975 on plaintiffs' application; (3) expressed a desire to acquire plaintiffs' property but never carried such a plan to fruition; and (4) acted in concert with the County of Santa Clara to damage plaintiffs' property. By defendants' estimation these allegations are not enough. Premising their argument for dismissal on California law, defendants rely most heavily on *Selby v. City of San Buenaventura*, 10 Cal.3d 110, 109 Cal.Rptr. 799, 514 P.2d 111 (1973) and *Dale v. City of Mountain View*, 55 Cal.App.3d 101, 127 Cal. Rptr. 520 (1976).

The California Supreme Court in the *Selby* case sustained a demur to a complaint for inverse condemnation where the plaintiff only had alleged the defendant county had adopted a general plan which might require a partial dedication of plaintiff's land for a street extension at some indefinite future time. Noting the singular importance of general plans, the court wrote:

> [A]doption of a general plan is several leagues short of a firm declaration of an intention to condemn property. . . .
> In order to state a cause of action for inverse condemnation, there must be an invasion or appropriation of some valuable property right which the landowner possesses and the invasion or appropriation must directly and specially affect the landowner to his injury. 10 Cal.3d at 119–20, 109 Cal.Rptr. at 805, 514 P.2d at 117.

Since the county had placed no obstacles in the path of plaintiff's use of his land by way of a denial of a permit to build or other specific action there was no invasion or appropriation of any valuable property right.

A similar result was reached by the court of appeal in the *Dale* case where the owner of a golf course located in an area zoned for agricultural use sought rezoning for residential development. The city of Mountain View declined to rezone the property and shortly thereafter amended its general plan designating plaintiffs' land for open space recreational uses. Relying on *Selby* the *Dale* court found that the plaintiffs failed to state a claim for inverse condemnation.

> In the instant case, there was no rezoning, no specific denial of any permit to the Dales that occurred after the city's adoption of [its amendment] to the general plan. The city's resolution merely confirmed an existing use and zoning classification . . . .. 55 Cal.App.3d at 108, 127 Cal.Rptr. at 524.

Defendants' reliance on these cases is misplaced. *Selby* and *Dale* held that the adoption of a general plan cannot constitute a taking; rather, a claim for inverse condemnation is stated only when the public entity goes beyond adoption and takes steps toward implementation of the plan which invade or appropriate valuable property rights in an immediate and tangible fashion. Thus, in *Dale*, no claim for inverse condemnation was stated because the city had done nothing following amendment to its general plan to interfere with plaintiffs' use of their property; that is, the city did not deny the plaintiffs' request for a zoning change based on provisions of the amended plan, the only denial came before the adoption of the open space designation. In *Selby* the plaintiff had based his inverse condemnation claim solely on the county's adoption of a general plan.

Plaintiffs in the instant case have alleged more than adoption (amendment) of a general plan. Unlike the plaintiffs in *Selby* and *Dale*, plaintiffs here maintain the defendants, acting under authority of the

1971 amendment to the general plan, took specific action in 1975 which resulted in the appropriation of a valuable property right. They do not allege harm from adoption of the plan but from the city's action pursuant to that plan.

Defendants also argue the complaint fails to state a claim because there is no legal relationship between the city and plaintiffs' property. It is true the California Constitution prohibits the extraterritorial application of a municipality's police power. But, that fact does not compel the conclusion defendants lacked the opportunity to condemn plaintiffs' property for public use without just compensation. The extraordinarily unique circumstances of this case cannot be disregarded. Although plaintiffs' property is technically outside the formal city limits, it has been subjected to city planning and regulation by local agency agreements and city policies. The city has successfully blocked development by its refusal to pre-zone and annex and by its refusal or inability to provide city sewer hook-ups. In the majority of cases a municipality will have no obligation to annex surrounding territory or provide non-city users access to its sewer system, but when a city envelopes county land and then, while holding a monopoly on the disposal of sewerage, denies annexation or sewer hook-ups the city cannot hide behind the fiction that its power and responsibility stops at its borders. After enjoying the benefits of regulating the property in question it ill becomes the city to deny its own effectiveness.

Viewing the allegations of the complaint as true and considering the total course of conduct thereby portrayed, the court concludes plaintiffs have stated a claim for an unconstitutional taking. *Compare with, Arastra Limited Partnership v. City of Palo Alto*, 401 F.Supp. 962 (N.D.Cal.1975); *Klopping v. City of Whittier*, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972); *Peacock v. County of Sacramento*, 271 Cal.App.2d 845, 77 Cal.Rptr. 391 (1969). Neither the nature and sequence of the actions alleged, nor the relationship of the parties defeats the taking claim. Furthermore, as this court has previously observed, the determination of whether a taking has occurred is essentially a factual one, and therefore not appropriate to a motion to dismiss. *M. J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354 (N.D.Cal.1975); *accord, Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal. 1974); *Sanfilippo v. County of Santa Cruz*, 415 F.Supp. 1340 (N.D.Cal.1976).

*Statute of Limitations*

Plaintiffs' second claim for relief, labeled inverse condemnation, is based upon Article I, section 19, of the California Constitution, and the ninth claim for relief is based upon 42 U.S.C. § 1983. Defendants move to dismiss these claims on the ground they are barred by the statute of limitations. The applicable statute is five years for the inverse condemnation, Cal.Civ.Pro.Code §§ 318, 319 (West), and three years for the § 1983 claim, Cal.Civ.Pro.Code § 338 (West). Defendants contend the statute should run from the date of the city's amendment to its general plan in March of 1971. Plaintiffs, on the other hand, contend the statute runs from the date the city denied their development proposal in July of 1975.

 Resolution of this dispute is controlled by *United States v. Dickinson*, 331 U.S. 745, 67 S.Ct. 1382, 91 L.Ed. 1789 (1947). The Supreme Court held in *Dickinson* that where a continuous chain of events or course of conduct is involved the cause of action accrues at the time of the final act in that series of events or course of conduct. 331 U.S. at 748–49, 67 S.Ct. 1382. The purpose of this rule is not only to avoid multiple actions but to allow aggrieved property owners to assess the full extent of their losses before filing suit. This rule has also been adopted in California, *Pierpont Inn, Inc. v. California*, 70 Cal.2d 282, 74 Cal.Rptr. 521, 449 P.2d 737 (1969). Based upon these cases plaintiffs' cause of action did not accrue until July 1975 when the defendants denied plaintiffs' development proposal. As defendants so vigorously maintain, the amendment of the general plan designating plaintiffs' property as

open space did not give rise to a cause of action; only when the city sought to effectuate the open space designation by denying plaintiffs' application for development did the cause mature.

*California Claims Statute*

██ On the same theory advanced above, namely that plaintiffs' claim accrued in 1971, defendants seek dismissal of all damage claims against the city because a demand pursuant to California Government Code § 911.2 was not filed within one year of March 29, 1971. Plaintiffs filed a claim within one year of the July 1975 council meeting where pre-annexation zoning was denied. For the reasons given above, plaintiffs' filing was timely and the court need not determine whether the California statute would be effective to limit federal constitutional rights.

*Immunities*

██ Defendants assert all monetary claims against individual members of the city council and the city should be dismissed on grounds of statutory and common law immunity. This court has previously observed that California statutes protecting public entities from suit for monetary damages growing out of local land use regulation do not apply in actions brought to enforce federal constitutional provisions guaranteeing just compensation for public taking of private property. *Sanfilippo v. County of Santa Cruz*, 415 F.Supp. 1340, 1343 (N.D.Cal.1976). Similar reasoning suggests the California legislature lacks the power to withdraw the substantive protections extended to landholders by the taking language of the California Constitution, Article I § 19.

██ Alternatively, defendants assert immunity from suit under 42 U.S.C. § 1983. Their assertion is correct with regard to the city because it is not a person within the meaning of the statute. *Monroe v. Pape*, 365 U.S. 167, 187–98, 81 S.Ct. 473, 5 L.Ed.2d 492 (1960). The individual members of the city council, however, are sued both in their official and individual capacities. In *M. J.*

*Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354, 360 (N.D.Cal.1975), this court noted a split of authority on whether public officials could be held liable for monetary damages when sued in their official capacity. The Ninth Circuit has since held respondeat superior liability will not lie under the Civil Rights Act. *Milton v. Nelson*, 527 F.2d 1158 (9th Cir. 1976). Additionally, it would be anomalous to find the city immune from money damages under § 1983 and then circumvent that holding by allowing damages against city officials sued in their representative capacities. *See Monell v. Dept. of Social Services*, 532 F.2d 259 (2d Cir. 1976), *cert. granted* 429 U.S. 1071, 97 S.Ct. 807, 50 L.Ed.2d 789 (1977). For these reasons the court concludes the § 1983 action against the city and against the city council members in their official capacities must be dismissed.

██ The remaining question then is whether the city council members are also immune from individual liability under § 1983 due to some absolute or qualified common law privilege. Defendants insist they are protected by an absolute legislative privilege. However, the actions set forth in the complaint do not involve the promulgation of legislation of a general or prospective nature, rather, they depict discretionary determinations with respect to a single parcel of land. This court has previously found the appropriate scope of protection for public officials making discretionary zoning decisions in the qualified immunity of *Wood v. Strickland*, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). *M. J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354, 360 (N.D.Cal.1975). Qualified immunity exonerates actions taken in good faith and upon a reasonable belief, questions of fact which preclude a 12(b)(6) dismissal.

Although the plaintiffs retain viable monetary claims against the city and city council members the court is moved to repeat the admonition given in *Sanfilippo v. County of Santa Cruz*, 415 F.Supp. 1340, 1343 n.1 (N.D.Cal.1976):

[M]onetary damages are not judicially favored in land regulation cases absent actual physical damage or invasion, regulations which allow no reasonable use of the complainant's property or are exceptionally restrictive, or confiscatory intent or bad faith on the part of the government. Because court-ordered acquisition is likely to be extremely burdensome for the community, and because the burden on the plaintiff can be remedied by removal of the offending land-use restriction, courts have found it appropriate to limit relief in inverse condemnation cases to a declaration that the regulation in question is invalid.

*CONCLUSION*

In their moving papers the defendants have raised certain arguments not directly addressed in this memorandum. It is the court's view that these arguments are better addressed in a motion for summary judgment or a trial on the merits. By way of summation, defendants' motion to dismiss or abstain is denied with one exception. The claim for relief pursuant to 42 U.S.C. § 1983 against the city and against the individuals sued in their official capacities is dismissed.

IT IS SO ORDERED.