REISKIN ET AL. *v.* COUNTY COUNCIL FOR MONTGOMERY COUNTY

[No. 323, September Term, 1961.]

*Decided June 18, 1962.*

The cause was argued before Brune, C. J., and Hammond, Prescott, Horney and Sybert, JJ.

*R. Robert Linowes,* with whom was *John D. Connelly* on the brief, for appellants.

*Carl J. Batter, Jr.,* for Oscar Zweig, and others, part of appellees.

*Lawrence E. Speelman, Assistant County Attorney,* with whom was *Alfred H. Carter, County Attorney,* on the brief, for County Council for Montgomery County, other appellee.

HAMMOND, J., delivered the opinion of the Court.

Once more in Montgomery County the inexorable pressures of expanding population and fewer lots available for use have brought about an application for rezoning of a vacant tract of land from detached single family residential classification to higher density apartment classification. The County Council denied the application, the lower court affirmed, and this appeal followed.

The property involved is a four and one-half acre tract, in the Woodside-Montgomery Hills area of Silver Spring, which is triangular in shape with its apex on the north side at the intersection of Second Avenue and Sixteenth Street. It lies some several hundred feet northwest of and below the grade of the main line of the Baltimore and Ohio Railroad. It is bordered on the south by some ten lots which front on Noyes Lane, a residential street fifty feet wide. On these lots, which are between the subject property and the railroad line, stand homes which cost $30,000 or more. The property is completely surrounded by R-60 single family residential zoning. Fine residences have been developed on two sides, Sixteenth Street being on the third side. The railroad is the boundary line between high density residential zoning to the south and low density residential zoning to the north.

The property is bordered on the east by Second Avenue, a residential street sixty feet wide, and on the west by Sixteenth Street Extended, a State highway one hundred twenty feet wide. This tract formerly was part of a larger parcel in a moderately sloping valley, but by reason of the construction of Sixteenth Street by the State Roads Commission in 1958 the parcel was split into two tracts, the one here involved being the eastern one. The construction brought about a difference in elevation of thirty-four feet at the lowest point of the property to the grade of Sixteenth Street.

The land was put in a single family residential zone when

the County was first zoned in 1928. In 1954 it was again classi-
fied single family residential (R-60) under the new compre-
hensive zoning ordinance and map. In 1957 the Maryland-
National Capital Parks and Planning Commission adopted a
zoning plan for the "Silver Spring Business District" (as part
of the General Plan for the physical development of the Mary-
land-Washington Regional District), which showed the prop-
erty as R-60. So did a plan of the "Lyttonsville-Rosemary
Hills Area" adopted by the Commission in August 1958.

In 1960 the appellants, who were contract purchasers of the
property (contingent upon the desired rezoning), requested
the County Council to change the classification of the tract
from R-60 to R-10, a high density multi-family zone.[1]

There is no contention that there was error in the original
zoning and no claim, in the usual sense, that there has been
such a change in the neighborhood as to justify a change in
zoning. The argument of the appellants is that when the State
Roads Commission constructed Sixteenth Street as an over-
pass across the railroad, it left the tract so far below grade
that it was a hole in the ground which could be utilized for
residential building only at a cost so prohibitive as to be con-
fiscatory. They produced before the Council a civil engineer
who testified that because of the large amount of fill that
would be required, the extensive storm drainage needed and
the special foundations that would have to be used, the cost
for the preparation of each of the sixteen building lots that
the tract would accommodate would be over $5,000 compared
with the usual cost of $1,750 a lot. He and an architect and
a land planner agreed that it was impracticable to build single
family residences on the land and that its best use would be
for high rise elevator apartments.

1. A similar application was made by another contingent con-
tract purchaser of the west parcel (on the west of Sixteenth Street
where the difference in grade is almost twice as extreme as it is
in the east parcel). The County Council consolidated the cases and
heard them together. The rezoning of the west parcel was denied
for want of a majority vote and on appeal the Circuit Court re-
versed and remanded. That application is not presently before us.

From this the appellants argue that the present zoning classification of the tract under consideration so restricts its use as to be confiscatory and is therefore unconstitutional as a taking of the land under cases such as *Frankel v. City of Baltimore,* 223 Md. 97, and *City of Baltimore v. Cohn,* 204 Md. 523. We see a difference between those cases and that before us. Here the Council had before it evidence which could permit it properly to find that the land could be reasonably used for the building of residences. Unlike the situation in *Frankel* and *Cohn,* the lot is surrounded by highgrade residential uses. It is not a residentially zoned island in a sea of more intense use classifications. The County Planning Board and its Staff recommended denial of the application for change to R-10 zoning, saying that "all the surrounding area on this side of the railroad for a distance of several blocks is zoned R-60" and that there had been no change in the character of the area which would justify changing this long established pattern.

The secretary of a construction company submitted a written statement to the Council. It said that he was in charge of certain construction work in the Silver Spring area; that his company had built a number of homes in the Woodside area in recent years and had completed five homes very recently in the block next to the property here involved; that his company had attempted to purchase that property several years ago at the prevailing price of from 35¢ to 50¢ per square foot for R-60 land but was informed that the sales price was much higher than was feasible to permit R-60 construction; that the plans of his company were to build a dead end street parallel to Noyes Lane and to construct houses on both sides of the street, about twelve in all, which would be built on the ground as it is, with the exception of some fill for the back yards extending towards Sixteenth Street. The statement said that in 1954 and 1955 considerable fill was dumped along Second Avenue on the property and that this fill has settled and that five or six houses in the R-60 classification can be built in addition to the other twelve houses, although spread footing foundations may be necessary in some cases. It also said that

plenty of free fill is available, that seventy per cent of the land under consideration is now suitable for R-60 construction, that the remaining part to be filled in at no cost would be available for such use within five to ten years, as well as that in the opinion of the writer the property under consideration is suitable for R-60 use and that such use would constitute a reasonable economic use.

The trial court found that it was fairly debatable as to whether the tract could be used for single family residences for which it was zoned. We think the testimony before the Council permitted this conclusion and that since there was ground for reasonable debate, the action of the Council was neither arbitrary, capricious, discriminatory nor unconstitutional in its effect and must be upheld. *County Council v. Gendleman,* 227 Md. 491; *Conley v. Montgomery County,* 216 Md. 379; *Mont. Co. Council v. Scrimgeour,* 211 Md. 306. The fact that it would be more profitable to the owners to sell or use the land for high density multiple family dwellings is not controlling, if it can be reasonably used for the purposes for which it is zoned, as the Council, with propriety, found that it was. *Ibid.*

The Montgomery County Code (1960), Sec. 72-85, permits appeals from the District Council on map amendments "by any person aggrieved by the decision to the circuit court." The owners of the land here involved have never been parties to the proceedings. The application shows that the appellants are contract purchasers of the land, contingent upon the re-zoning which they sought. Montgomery County argued below and has argued here that to be an "aggrieved person" one must show special damages, pointing to cases such as *Pattison v. Corby,* 226 Md. 97, and *Loughborough v. Rivermass,* 213 Md. 239, in which the Court held that the distance of the protestants from the property being dealt with was too great to confer upon them the status of an aggrieved person since there was no showing of special damages.

The appellants counter by pointing out that the Montgomery County Zoning Ordinance, Sec. 107-30, provides, "Proposals for amendment of the Zoning Ordinance Map may be

made only * * * by a person with a financial, *contractual* or proprietary interest in the property to be affected by the proposed amendment." (Emphasis supplied.) We think that since the Montgomery County ordinance explicitly makes a contract purchaser of property a proper applicant for amendment of a zoning classification it can only be deduced that such an applicant has a sufficient interest in the property dealt with to be a person aggrieved by a refusal of his application. It has been held that a rejected applicant is an aggrieved person. *Smith v. Selligman,* 109 S. W. 2d 14 (Ky.). See also 8 *McQuillin, Municipal Corporations,* Sec. 25:318; and 2 *Southwestern Legal Foundation, Institute on Planning and Zoning,* 82. There is considerable authority to the effect that a contract purchaser whose obligation to purchase is contingent upon rezoning to be applied for is a person sufficiently aggrieved by the denial of that application as to be a proper person to appeal. *Carson v. Board of Appeals of Lexington,* 75 N. E. 2d 116 (Mass.) ; *Cox v. Township of Wall,* 120 A. 2d 779 (Super. Ct. N. J.) ; *Union Free School Dist. v. Village of Hewlett Bay Pk.,* 102 N. Y. S. 2d 81, aff'd 103 N. Y. S. 2d 831; *Appeal of Elkins Park Imp. Ass'n,* 64 A. 2d 783 (Pa.) ; 2 *Metzenbaum, Law of Zoning* (2d ed.), 1040.

We think the appellants had standing to appeal to the Circuit Court and to this Court.

*Order affirmed, with costs.*