# CITY OF HAGERSTOWN *v.* HUTSON ET UX.

[No. 12, September Term, 1962.]

*Decided October 17, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SY-BERT, JJ.

*Elwood E. Hauver,* with whom was *Edward Oswald, Jr.,* on the brief, for appellant.

*Samuel C. Strite,* with whom was *William P. Kreyken-bohm* on the brief, for appellees.

HAMMOND, J., delivered the opinion of the Court.

The City of Hagerstown appeals from an order of the Circuit Court for Washington County which reversed the action of the Board of Zoning Appeals of the City in denying the appellees, the Hutsons, the right to use a residentially zoned lot for a filling station.

The Hutsons acquired the lot in 1947. Zoning was put in force in Hagerstown on September 6, 1951, by the passage of an ordinance now codified as Ch. 24 of the Code of the City of Hagerstown (1956 Edition).

When acquired and when zoning was adopted, the lot had a frontage of one hundred four feet on Nottingham Road and a depth of one hundred eighty-six feet along Washington Avenue, narrowing as it went back, with a rear line of seventy-two and a half feet. Recently Washington Avenue was made the eastbound lane of the dual highway known as U. S. Route 40. In the process the State took the ten feet of the lot nearest

Washington Avenue, and raised the grade. In addition, three easement rights over separate areas of the lot were acquired. The first was for a slope adjacent to Washington Avenue sixteen feet wide at the back and tapering to nothing at Nottingham Road. The second covered a small area at the intersection, and the third embraces a ten-foot strip, bordering the rear line of the lot, with a length of forty-eight feet. The last easement was for the purpose of receiving water from a twenty-four inch drain which crosses Washington Avenue and ends at the bottom of the slope on the Hutson lot.

The building lines on the front and side of the lot are, under the zoning ordinance, twenty-five feet from the pavements on Nottingham Street and Washington Avenue, respectively. The lot slopes away from both thoroughfares. In the rear, on the south, it is twelve feet below street level. When the building lines on both streets are taken into account, there remains an area available for a building site with a frontage of fifty-nine feet on Nottingham Road and a depth of one hundred fifty-one feet along Washington Avenue, to a rear line of thirty-seven and a half feet.

The area involved was zoned originally for a community shopping center; but, because it has never been so availed of, the only uses permitted are, under Sec. 24.11 (2), "uses permitted in residential districts." A number of houses of a market value of from $7,500 to $10,000 have been built nearby, either just before or since zoning was established. The neighborhood is entirely residential except for a reservoir owned by the City, across the dual highway.

The Hutsons, claiming that the diminution in size and the lowering of the grade of the lot caused by the new highway made it not reasonably adaptable to any permitted residential use, applied for a permit to use the lot for a filling station on the ground that the applicable zoning constituted an unconstitutional taking. After a hearing at which a number of witnesses testified in a rather vague and general way, due somewhat to the almost continuous colloquies between Board members or between a Board member and a witness, current or past, the Board denied the application. No findings of fact

were made and no opinion was filed by the Board. From the nature of the questions asked and the colloquies indulged in, it may be inferred that it was thought that the lot could be sold or utilized by the Hutsons for the erection of a dwelling, although the record does not foreclose the inference that the Board felt it had not been shown that the lot could not be used for some one of the sixteen uses other than a dwelling house permitted in a residential zone.

The Hutsons went to the Circuit Court under the right of appeal given by Sec. 24.31 (1) of the Hagerstown Code. Judge Cobey said it was his opinion that the evidence before the Board clearly established that the only economic use for the property is a commercial use and that its continuance in a residential zoning classification would constitute a taking in the constitutional sense under *Frankel v. City of Baltimore,* 223 Md. 97, and *City of Baltimore v. Cohn,* 204 Md. 523, but it seems apparent, both from the evidence before the Board and the opinion as a whole, that the premise of the decision was the necessity of a choice between use for a dwelling or use for a filling station.

We think it is a close question whether or not a dwelling can economically be put on the lot. All of the witnesses said it could be done, with those testifying for the owners adding that it could not be done reasonably. The Chairman of the Board said that some of the neighboring houses on Nottingham Road were split levels. Mr. Hutson, a builder, replied that it was doubtful whether one could get "any reasonable figure out of it" if a house of this type were built on the lot, that generally in building on unusual topography one takes a loss, and that F. H. A. requirements could not be met.

A land engineer testified that the lot was not "reasonably adaptable" for use as a residence site. When the Chairman suggested that the maps in evidence showed that one could put a house thirty feet by thirty feet (or "a little bigger") on the lot, with due observance of the building lines, with a difference in elevation between front and rear of only two feet, the witness agreed. The Chairman then said: "If the topography is the same there now as when this map was drawn,

would it, in your opinion, be feasible to construct a house facing on Nottingham Road?" The answer was "Yes, you could put a dwelling upon the front of the lot." A real estate man also testified that the lot was not "reasonably adaptable" for use as a residence site. To the Chairman's suggestion that if a house were built facing Nottingham Road, as the neighboring houses had been, there would be "very little difference in your elevation," the witness answered in part: "If you have a house down in a hole, it is much harder to sell than a house that sits up on a bank." The City Building Inspector said the lot would not be "a choice building section" and when asked if the lot were reasonably adaptable for residential use, answered: "For my own personal use, no. I might add there isn't a member on this Board that would like to live there." A Board member asked if the lot could be used "for anyone of the seventeen uses under Section 24.8" and the Inspector said, "You are going to have to pick out somebody that has money to build there."

The testimony, unsatisfactory as it is in its vagueness, could be interpreted as bringing the case within the holdings of *Reiskin v. Montgomery County Council,* 229 Md. 142, and *Cities Service Oil Co. v. Board of County Comm'rs,* 226 Md. 204, rather than being controlled by *Frankel* and *Cohn.* In *Reiskin* there was evidence that made it fairly debatable whether the land there involved, which was in the midst of residences, as is the land here involved, could be used for the single family dwelling classification for which it was zoned, and it was pointed out that the general residential environment and the reasonable probability of use for which zoned, less profitable though it might be, distinguished the case from *Frankel* and *Cohn,* and made the action of the County Council in denying reclassification neither arbitrary, capricious, discriminatory nor unconstitutional in effect.

The record before us makes it plain that the most profitable use of the Hutson lot is for a filling station, but mere loss of profit is not confiscation or an unconstitutional taking, as *Reiskin* and the *Cities Service* cases, citing earlier decisions to this effect, reiterated.

The case before us should not, as we see it, necessarily turn on whether the Circuit Court was right in deciding, as it did, that the lot could not, with economic feasibility, serve as a base for a dwelling. The property owner has the burden of showing that the controlling zoning regulation deprives him, in the words of *Frankel*, "of all beneficial use of his property" and thus in effect takes his property without just compensation. The Hutsons failed entirely to show that their lot could not reasonably and beneficially be used for one or more of the sixteen uses, other than a dwelling, permitted by Sec. 24.8 of the Hagerstown Code. These include an apartment house (the use sought and denied in *Reiskin*), a church, a club, a convalescent or nursing home, a library, art gallery, museum or community center, a professional office, an aged home, a school or kindergarten or nursery school, a telephone exchange, and a tourist home.

It may be that competent testimony would show that the lot cannot be reasonably and beneficially (as distinguished from most profitably) be used for any of these permitted purposes. We think that the substantial merits of the case will best be determined by a remand without affirmance or reversal under Maryland Rule 871 (a) for the giving of testimony which will either sustain the claim of the Hutsons of an unconstitutional taking or show that their lot has a reasonable and beneficial permitted use or uses.

Section 24.31 (4) of the Code of the City of Hagerstown (1956 Edition) provides that if upon appeal "it shall appear to the Court that testimony is necessary for a proper disposition of the matter, it may take evidence or appoint a commissioner to take such evidence as it may direct and report the same to the Court with his findings of fact and conclusions of law which shall constitute a part of the proceedings upon which the determination of the Court shall be made." The paragraph further provides that the Court may reverse or affirm, wholly or partly, or may modify the decision brought up for review. Maryland Rule B 10 says that upon appeal to the Circuit Court "Additional evidence may be allowed when permitted by law." Rule B 12 provides that in addition to affirm-

ing, reversing or modifying the action appealed from, the Circuit Court may remand the case to the agency for further proceedings. Upon remand the Circuit Court for Washington County may take additional evidence as to the feasibility of devotion of the lot to any of the uses permitted by Sec. 24.8 of the Hagerstown Code, either directly or through a commissioner, or remand the case to the Board to determine the question specifically.

> *Case remanded, without affirmance or reversal, costs to abide the result.*