## POOLE v. BOARD OF ZONING APPEALS OF HAGERSTOWN ET AL.

[No. 368, September Term, 1970.]

*Decided April 8, 1971.*

The cause was argued before BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*David W. Byron,* with whom were *John H. Urner* and *Byron, Moylan & Urner* on the brief, for appellant.

No brief filed on behalf of appellees.

McWILLIAMS, J., delivered the opinion of the Court.

"Zoning was put in force in Hagerstown on September 6, 1951." *City of Hagerstown v. Hutson,* 229 Md. 475, 476 (1962). On that day Dr. Edward Vail, a veterinarian, owned three contiguous lots improved by a frame structure known as #1025 Pennsylvania Avenue. It is agreed that, since about 1944, he had been using the property as an animal hospital and that he had maintained kennels for the boarding of all types of pet animals, uses proscribed by the 1951 ordinance which classified the area as "Residential A." Dr. Vail continued the nonconforming uses of his property until March 1969 when he sold it to Dr. Fischel, also a veterinarian.

Contemplating improvements which, for an expenditure of about $11,000, would provide twice as many animal pens in a permanent structure, Dr. Fischel applied for a building permit. The Building Inspector refused to issue the permit because "kennels are not permitted in Residential A districts." Dr. Fischel noted an appeal to the Board of Zoning Appeals. After a hearing, on 21 October 1969, before four of the five members of the Board,

> "[i]t was moved [according to the Board's minutes] by Mr. Clarence Eldridge, seconded by Mr. Murray Reed and unanimously approved by all four Board Members present that this permit be approved with the following stipulations:
> 1. All kennels and runs will be enclosed.
> 2. Building will be soundproof.
> 3. Airconditioning system will be equipped with a filter.
> 4. Old kennels will be demolished."

The appellant (Poole) who lives directly across Pennsylvania Avenue from the property and who gave evidence in opposition to the application, as did five of his neighbors, noted an appeal to the circuit court.

The appeal came on to be heard before the trial judge, Rutledge, J., on 27 January 1970. Evidence was given by Dr. Fischel, Poole and Ralph Tagg, a neighbor. During the course of the hearing Judge Rutledge observed:

"Gentlemen, I'm a little confused how the Board of Zoning Appeals would give permission to build a building and nobody knows what kind of building it is or what it's going to cost * * *."

Later on Judge Rutledge invited counsel to his chambers and for the record he said, in part:

"Gentlemen, sometimes it happens that cases come before the court, and, there is insufficient evidence before the court to make a proper determination. Sometimes it is difficult to make a correct decision even if you have all the information, where you have insufficient information it's even more difficult; and, I think, in this case, the appellants are greatly concerned as how a lot will be covered by a building and the use greatly extended. We are talking about the pre-existing use, and the laws are rather clear that it can't be extended. I think what the—Doctor Fischel envisions is not an extension at all, but an improvement of the present facilities. However, uh, no plans and specifications have been drawn up, and, no capacity mentioned; and, therefore, the court cannot make a decision at this time, and the case will be continued on March 19; so, I'll ask Doctor Fischel and Mr. Spense if they can draw up some plans and specifications in regard to location, and function, and all that sort of thing; and, Doctor Fischel, himself, probably, should know what he's getting into, because these days buildings are going up and it's probably higher in March than it is right now, and building costs increase; and, at that time, we'll take another look at things,

and the court will have, I think, better and sufficient information on which to base a verdict. Okay, case will be continued on March 19."

On 19 March the hearing was resumed. Dr. Fischel brought in some plans and a contractor's proposal indicating the kind of materials he planned to use. At this point one should note that the chairman of the Board of Zoning Appeals had resigned some weeks prior to the 19 March hearing. One should note also that an ordinance adopted on 24 March 1970 abolished the five man Board and established in its place a three man Board. Mr. Eldridge was the only one of the remaining four members of the old Board to be appointed to the new Board. At the conclusion of the 19 March hearing counsel were heard and the court took the case under advisement.

On 1 May the decree affirming the decision of the Board of Appeals was filed. It contained the following provisos (the italicized language differs from the language used by the Board):

> "1. All kennels and runs will be enclosed.
> 2. Building will be sound proof *as provided in specifications.*
> 3. *Building will be equipped with electronic air filtration as provided in specifications.*
> 4. Old kennels will be demolished.
> 5. *Side lot lines must be observed.*"

What follows is an excerpt from the opinion filed with the court's decree:

> "The Board of Zoning Appeals decided to grant the permit, thereby reversing the building inspector. In an opinion (filed nunc pro tunc April 15, 1970 at the request of the court) the Board said,
> " 'The sworn testimony of record shows that this Animal Hospital with runs and kennels was in existence long before Zoning in 1951, and also there prior to the location of any of

the objecting property owners in the adjacent or immediate vicinity, and therefore became a Non-conforming Use under 68-21 of the Code and under 68-35-F is permitted to extend the existing building and the existing use thereof upon the lot occupied by such building at the time of the passage of this Article * * * subject to yard regulations.

" 'Also, under 68-39 — Repairs of damaged buildings. Nothing in this Article shall prevent the restoration of any part of a building declared unsafe. Looked at kennels at end of lot as about outmoded and unsafe, and which could be repaired if so desired.

" 'The Board unanimously agreed that it was better to tear down the old kennels at the back of the lot, and extend the present hospital, thereby getting rid of noise and odor, thereby upgrading the premises and the surrounding neighborhood.' "

Attached to the opinion is a "Summary" dated 15 April 1970, the greater part of which appears in the quoted excerpt from the court's opinion. The "Summary" is signed by Murray Reed, Chairman, Frank Luther, Vice Chairman, Clarence Eldridge and Ben Hoffman. This it seems is the "opinion" *requested* by the court. We must assume that the "Summary" or "opinion" was prepared and signed on 15 April since there is nothing in the record suggesting it was done on some other day. Indeed the "Summary" states that the "decision *was* made" and that "approval for a permit *was* made." (Emphasis added.) The expression *nunc pro tunc* seems to have been employed for the first time by Judge Rutledge. Neither Poole nor his counsel were aware of the "nunc pro tunc" opinion until they read about it in the court's opinion. Although the appellees have not appeared in this Court we think it is reasonable to assume that counsel for Fischel was likewise unaware of it.

Poole contends that three of the four members who signed the 15 April "Summary" or "opinion," having been replaced on 24 March by the new Board, had neither the power nor the authority to take any further action in the matter and that the same is true in respect of the fourth member who, as has been said, had resigned even before 24 March. Moreover, he says, the fact that Eldridge was reappointed to the new Board adds nothing to his status as far as this case is concerned. Although Poole has provided us with no authority in this regard, and we have found none, except in *Reed v. President and Comm'rs of Town of North East,* 226 Md. 229 (1961), which bears only tangentially on the point, we think there is much in what he says but we shall not so hold because we find it unnecessary to do so. Moreover, it seems to us that the record does not reflect some facts and circumstances which we suspect might be significant.

Poole argues also that the introduction into the record of the "nunc pro tunc" opinion without giving counsel an opportunity to controvert any misstatements of fact, to rebut any erroneous conclusion of law, or to point out any other shortcomings was most irregular. Especially, he continues, since the court seems to have found the Board's "opinion" to be persuasive. We agree that its inclusion was irregular and we shall remand the case so that Dr. Fischel can make a fresh start.

A reading of the Board's "opinion" makes it quite clear that only two facts were found, the first (and this was stipulated) that "the kennels were in existence prior to zoning," the second that the kennels were "there prior to the location of any of the objecting property owners in the adjacent or immediate vicinity." Poole testified at the 29 October hearing before the Board that he had lived there since 1939. Foster Blinckenstaff claimed residence since 1941. Mrs. Roy Baker built her house in 1940. It will be recalled that Dr. Vail did not make his appearance until 1944. To state the obvious the Board actually found only one "fact" and that was contrary to the undisputed and uncontroverted evidence.

The following excerpt from Judge Rutledge's opinion seems to suggest that he did indeed find the Board's opinion to be persuasive. He said:

> "It is obvious that the Board in this case found a nonconforming use; and that it exercised its authority under 68-35 (F) permitting the erection of a new building, after finding as a fact that under Sec. 68-35 'such exception will not substantially affect adversely the uses of adjacent and neighboring property permitted by this Article.'
>
> "The Court is in agreement with the Board. * * *."

Dr. Fischel's continuance of Dr. Vail's nonconforming use of the property (later stipulated) was so obvious that it hardly required a finding. We have scrutinized the Board's "opinion" not once but many times and we have yet to see in it a "finding" that the use contemplated by Dr. Fischel "will not substantially affect adversely the uses of adjacent and neighboring property" as required by Sec. 68-35 of the Code of the City of Hagerstown. There is nothing whatever in the evidence given before the Board which could support such a finding. The evidence, such as it is, comes close to supporting a contrary finding. Indeed there is nothing in the evidence given in the two hearings in the circuit court which could support a finding of no substantial adverse effect.

When it is recalled that the Board heard none of the evidence given in the circuit court and that it never had before it the plans and specifications produced by Dr. Fischel at the 19 March hearing one wonders what sort of a structure it had in mind when it approved the issuance of the permit.

Had Poole and his counsel been given an opportunity to expose the deficiencies and inaccuracies of the Board's opinion Judge Rutledge might very well have reached a different conclusion. Of course, Poole did move (on 15 May) for a reconsideration and a remand to the Board of

Zoning Appeals but he must have thought it unlikely the matter would be heard before the expiration of the time for appeal. In any event he filed his appeal on 27 May. Judge Rutledge was quite right in holding that after the appeal he no longer had any jurisdiction in the matter.

The decree will be reversed and the case will be remanded so that Dr. Fischel can without prejudice once more apply to the Building Inspector for a permit.

*Decree reversed.*
*Case remanded for further proceedings conformable with the views expressed in this opinion.*
*Costs to be paid by the appellees.*