**Charles H. LIGON et al.**

v.

**STATE OF MARYLAND and Montgomery County, Maryland, etc., et al.**

**Civ. No. B–75–936.**

United States District Court,
D. Maryland.

Nov. 23, 1977.

---

William M. Canby, Rockville, Md., for plaintiffs.

Francis B. Burch, Atty. Gen. of Maryland, Henry R. Lord, and Warren Rich, Asst. Attys. Gen. of Maryland, Annapolis, Md., and Frank W. Wilson, Gaithersburg, Md., for State of Maryland.

Richard S. McKernon, County Atty., Rockville, Md., for Montgomery County, Maryland.

Barbara A. Sears, Durvasula S. Sastri, Sanford E. Wool and Gus Bauman, Silver Spring, Md., for Maryland-National Capital Park and Planning Commission.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is a civil action arising out of the rezoning of two parcels of land in Montgomery County, Maryland. Plaintiffs hold title to the land as trustees for Gaithersburg Association, a general partnership comprised of the former stockholders of Urbana Development Corporation [Urbana], a defunct Maryland corporation. Defendants are the State of Maryland, Montgomery County, Maryland [County], The Maryland National Capital Park and Planning Commission [Commission], The Montgomery County Council [Council], and the individual Council members who voted for the rezoning resolution.

Before reaching the merits of the motions to dismiss which are the subject of this memorandum and order, a review of the stormy and litigious history of the attempted development of the parcels is necessary. In 1965, Urbana purchased the land which was zoned R–R (rural residential) and thereafter sought to have it reclassified to permit industrial use. The Montgomery County Council sitting as the District Council, see *Annotated Code of Maryland*, art. 66D, § 8–101 (Supp.1976), approved Urbana's application and the property was rezoned to I–1 (light industrial). The rezoning was affirmed by the Maryland Court of Appeals. *Kirkman v. Montgomery County Council*, 251 Md. 273, 247 A.2d 255 (1968). In November 1970, Urbana was dissolved and title to the land was transferred to plaintiffs as trustees for the partnership. In 1971, the trustees entered into contracts for the sale of parcels within the property subject to the approval of an industrial subdivision plat by the Commission. After the trustees learned that their land was within the taking lines of Seneca State Park, the subdivision plan was withdrawn from consideration. The trustees allege that this was done after they were informed that continued development would cause the tract to be placed in reservation under the subdivision provisions of the Montgomery County Code. The trustees then attempted development without subdi-

vision and began to clear a portion of the property. The trustees allege that the Council considered this an emergency matter at its June 29, 1971 meeting and requested its attorneys to pursue legal action halting the development of the tract. The trustees allege that development was, in fact, stopped after the State threatened litigation under state erosion laws. Without detailing the specific allegations in the trustees' complaint, the complaint alleges that during the next year the defendants and their agents engaged in a course of conduct designed to prevent any development of the tract and to acquire it for park land, culminating with the Council's adoption of Resolution 7–797 which reclassified the tract from I–1 to R–R (rural residential).

Following the adoption of Resolution 7–797, the trustees appealed the Council's decision to the Circuit Court for Montgomery County. The circuit court rejected the trustees' contention that the downzoning deprived them of property rights without just compensation in violation of the fifth and fourteenth amendments to the Constitution and article three, section forty of the Maryland Constitution, *In re* Application No. F–805, Law No. 36699 (Mont.County Cir.Ct., filed June 28, 1974) at 9–10.[1] The circuit court accepted the trustees' contention that the reclassification was a local map amendment and reversed the Council's action. The Council appealed and the case was heard by the Maryland Court of Appeals following the issuance of a writ of certiorari to the Maryland Court of Special Appeals. The Court of Appeals reversed, finding that the reclassification amounted to comprehensive rezoning which "bore a substantial relationship to the public health, comfort, order, safety, convenience, morals and general welfare." *County Council v. District Land Corp.*, 274 Md. 691, 337 A.2d 712, 718 (1975). The trustees did not seek a writ of certiorari in the United States Supreme Court from the adverse decision.

Count I, which contains thirty-eight paragraphs incorporated by reference in the three other counts, alleges that the reclassification is an unlawful taking in violation of the fifth amendment to the Constitution and article 23 of the Maryland Declaration of Rights and article 3, § 40 of the Maryland Constitution. Count II alleges that the defendants and their agents have acted to deny plaintiffs rights guaranteed by 42 U.S.C. § 1983. Count III alleges that defendants have conspired to violate plaintiffs' civil rights in violation of 42 U.S.C. § 1985(3). Count IV alleges both tortious interference with contract rights and tortious abuse of process by defendants.

Plaintiffs seek injunctive relief forbidding the defendants from interfering with the trustees' development of the tract under the I–1 zoning classification. Plaintiffs also seek one million dollars for the alleged uncompensated taking, nominal monetary damages against all defendants on Counts II, III and IV, costs, and other relief that the court deems appropriate. All defendants have moved to dismiss.

■■■ In Count I, plaintiffs have competently alleged a cause of action for violation of their constitutional rights under the fifth and fourteenth amendments to the Constitution. *Cuyahoga River Power Co. v. City of Akron*, 240 U.S. 462, 464, 36 S.Ct. 402, 60 L.Ed. 743 (1916); *Mosher v. City of Phoenix*, 287 U.S. 29, 32, 53 S.Ct. 67, 77 L.Ed. 148 (1932); *M. J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354 (N.D.Cal.1975); *Dahl v. City of Palo Alto*, 372 F.Supp. 647 (N.D.Cal.1974). In Counts II and III, plaintiffs allege violations of their civil rights in violation of 42 U.S.C. §§ 1983 and 1985(3). Neither the State of Maryland, Montgomery County nor the Montgomery County Council are "persons" within the meaning of section 1983. *Monroe v. Pape*, 365 U.S. 167, 187–92, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *City of Kenosha v. Bruno*, 412 U.S. 507, 513–14, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973); *Shapiro v. Maryland*, 336 F.Supp.

---

1. Filed as Exhibit B, plaintiffs' opposition to motion to dismiss by Montgomery County (court paper 17).

1205, 1208 (D.Md.1972); *Donohoe Construction Co., Inc. v. Maryland Nat. Cap. Park & Planning Comm'n*, 398 F.Supp. 21, 23 (D.Md.1975); *Shellburne, Inc. v. New Castle County*, 293 F.Supp. 237, 244–46 (D.Del. 1968). Neither are they "persons" within the meaning of section 1985(3). *Bosely v. City of Euclid*, 496 F.2d 193, 195 (6th Cir. 1974); *M. J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354, 359–60 (N.D.Cal. 1975); *Black Brothers Combined v. City of Richmond*, 386 F.Supp. 147, 148 (E.D.Va. 1974). This is true whether the action be for injunctive or monetary relief. *Monroe v. Pape, supra; City of Kenosha v. Bruno, supra.*

Defendant Commission contends that the court lacks subject matter jurisdiction over it because it is not a person within the meaning of the Civil Rights Act. The question was expressly left open by Judge Young in *Donohoe Construction Co. v. Maryland Nat. Cap. Park & Planning Comm'n*, 398 F.Supp. 21, 23 (D.Md.1975). While the statute is by no means explicit on the question of whether the Commission is an agency of the State or of Montgomery and Prince George's Counties, the Maryland Court of Appeals recently addressed the issue in *O & B, Inc. v. Maryland-Nat. Cap. Park & Planning Comm'n*, 279 Md. 459, 369 A.2d 553 (1977), a case involving the status of the Commission as a state agency for purposes of sovereign immunity in tort under the common law. The court analyzed the history and function of the Commission and concluded that the Commission is an agency of the State. The court acknowledged that the Commission is subject to county control and performing local functions, but found that the Commission was established by public general laws rather than by county legislation and its powers and duties, as well as the degree of local control, is determined by the state legislature. 369 A.2d at 555–56. In addition, the court found provisions in *Annotated Code of Maryland*, art. 66D (Supp.1976) which indicates that the Commission is a state rather than local governmental agency. 369 A.2d at 556. The court concluded:

Thus, although the Commission has local functions and responsibilities, it appears that the General Assembly has created the Commission as the state agency responsible for coordinating planning, zoning, and recreational activities within the Washington metropolitan area which otherwise would be the sole responsibility of the counties. Even though Prince George's and Montgomery Counties exercise some control over the Commission, the extent to which they do so is determined by the General Assembly and not by the county charters or the county laws. The powers and duties of the Commission, created by the General Assembly, are solely within the control of the General Assembly.

For these reasons, we find that the Commission is properly characterized as a state agency for the purpose of determining its right to invoke the doctrine of sovereign immunity.

369 A.2d at 556.

■ As a state agency, the Commission is not a person within the meaning of the Civil Rights Act. *Burt v. Board of Trustees*, 521 F.2d 1201, 1205 (4th Cir. 1975); *Huntley v. North Carolina State Board of Education*, 493 F.2d 1016, 1017 n. 2 (4th Cir. 1974). The court notes that had the Maryland Court of Appeals concluded that the Commission was a county, rather than state agency, the claims in Counts II and III would be dismissed because county agencies are not persons within the meaning of 42 U.S.C. §§ 1983, 1985(3). *See M. J. Brock & Sons, Inc. v. City of Davis*, 401 F.Supp. 354, 359–60 (N.D.Cal.1975). No jurisdiction exists for claims against the Commission on Counts II and III.

■ Plaintiffs do not specify in the complaint whether the individual defendants are being sued in their official or individual capacities or both. Plaintiffs seek monetary and injunctive relief from the Council members so presumably they have been sued in both capacities. Although jurisdiction does exist over the Council members for equitable claims when sued in their official capacities, damage claims against

the members in their official capacities cannot be maintained under the Civil Rights Act because they are extensions of the county. *Bennett v. Gravelle*, 323 F.Supp. 203, 210–11 (D.Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971), *cert. dismissed*, 407 U.S. 917, 92 S.Ct. 2451, 32 L.Ed.2d 692 (1972). Damage claims can be maintained against the Council members in their individual capacities.

■ Despite the fact that the Council members are persons within the meaning of the Civil Rights Act, in order to state a claim for relief under 42 U.S.C. § 1985(3), plaintiffs must satisfy the rule set forth in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The Supreme Court stated:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

403 U.S. at 102, 91 S.Ct. at 1798 (emphasis original). While plaintiffs have alleged in conclusory form a denial of equal protection and due process, the allegations fail to disclose any class-based discriminatory intent, e. g., that persons in a class different than plaintiffs' would have been accorded treatment different from that plaintiffs received. Hence no cause of action is stated under 42 U.S.C. § 1985(3). *Stephens v. City of Plano*, 375 F.Supp. 985, 987–88 (E.D.Tex. 1974); *Brosten v. Scheeler*, 360 F.Supp. 608, 614 (N.D.Ill.1973), *aff'd*, 495 F.2d 1375 (7th Cir. 1974).

■ Count IV contains state law claims alleging that defendants' actions constituted both a tortious interference with a contractual relationship and a tortious abuse of process. Pendent jurisdiction exists whenever federal and state claims derive from a common nucleus of operative facts such that a plaintiff would ordinarily try them all in one proceeding. *United Mineworkers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The State and the Commission have raised the eleventh amendment as a jurisdictional bar to plaintiffs' claims in Count IV. The eleventh amendment is a bar to the state law claims made against both defendants and all claims against them found in Count IV will be dismissed. *Edelman v. Jordan*, 415 U.S. 651, 677–78, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

In Count I, the trustees allege that actions by the State, County, Council, and Commission deprived them of their property without just compensation, in derogation of rights guaranteed by the fifth amendment. The defendants contend res judicata is a bar to the allegations. Before the court addresses the merits of defendants' motions, some discussion of the procedural steps involved in a review of a zoning decision is in order. Following the Council's adoption of Resolution 7–797, the trustees had two avenues through which they could attempt to escape the effects of the rezoning. The trustees could have challenged Resolution 7–797's validity either because it was a local map amendment rather than comprehensive rezoning or because as comprehensive rezoning it did not bear a substantial relationship to the public health, safety, and general welfare. *See Roberts v. Grant*, 20 Md.App. 247, 315 A.2d 103, *cert. denied*, 271 Md. 743 (1974). If the trustees' appeal had failed, they could have sought a special exception, *see Gingell v. Board of County Comm'rs*, 249 Md. 374, 239 A.2d 903 (1968); *Poe v. City of Baltimore*, 241 Md. 303, 216 A.2d 707 (1966), arguing that Resolution 7–797 as applied to their property constituted a taking without just compensation. *See City of Baltimore v. Cohn*, 204 Md. 523, 105 A.2d 482 (1954). Alternatively, the trustees could have combined an attack on the validity of the rezoning with the taking question in the same action. *See Montgomery County Council v. Kacur*, 253 Md. 220, 252 A.2d 832 (1969); *Tauber v. Montgomery County Council*, 244 Md. 332, 223 A.2d 615 (1966); *City of Hagerstown v. Hutson*, 229 Md. 475, 184 A.2d 811 (1962). Under Maryland practice either course is permissible, although some authority suggests that a plaintiff must exhaust his administrative remedies by seeking a special

exception before litigating the taking question. *Compare Gingell v. Board of County Comm'rs*, 249 Md. 374, 239 A.2d 903 (1968), *with Montgomery County Council v. Kacur*, 253 Md. 220, 252 A.2d 832 (1969).

Defendants argue that the trustees presented the taking issue in their appeal to the Montgomery County Circuit Court and that having raised the issue in the state proceeding, the trustees are foreclosed from relitigating the issue here.

The circuit judge framed the issues on appeal as:

1. Was [the rezoning] a true sectional map amendment or was it two local map amendments disguised as comprehensive rezoning?

2. Does the record establish that the District Council's adoption of this sectional map amendment is discriminatory, arbitrary, capricious and illegal, and

3. The [trustees] pose the following as their third issue for consideration by this Court:

The action of the District Council was an unlawful deprivation of the rights of the owners to enjoy, own and dispose of their property, as secured to them, under the Fourteenth Amendment of the Constitution of the United States, Article Twenty-three of the Declaration of Rights of Maryland and Article Three, Section Forty of the Constitution of Maryland.

*In re* Application No. F–805, Law No. 36699 (Mont.County, Md.Cir.Ct. filed June 24, 1974) at 7. As previously noted, the court determined that the rezoning was not a taking. The court found Resolution 7–797 to be a local map amendment, however, and reversed the Council. *Id.* at 9–10. On appeal, the Maryland Court of Appeals reversed, finding that the rezoning was both comprehensive and substantially related to the public good. *County Council v. District Land Corp.*, 274 Md. 691, 695–704, 337 A.2d 712, 715–19 (1975). The circuit court's determination on the taking issue was not

before the Court of Appeals because the trustees did not file a cross appeal and the court's opinion makes no reference to that finding. *See* Brief of Appellees, at 1–2, *County Council v. District Land Corp., supra.*[2] The question is what effect, if any, this court must give to the decisions of the Maryland Court of Appeals and the Montgomery County Circuit Court.

The heart of the res judicata doctrine is the public policy that all litigation must at some time end and once tried, issues which were tried or should have been tried are settled forever, as between the parties. *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 525, 51 S.Ct. 517, 75 L.Ed. 1244 (1931); *Beall v. Kearney & Trecker Corp.*, 350 F.Supp. 978, 981 (D.Md. 1972). While every person has the fundamental right to be heard, there is no public policy in favor of allowing him an opportunity to raise the same issues in a second forum. *See Eisel v. Columbia Packing Co.*, 181 F.Supp. 298, 301 (D.Mass.1960).

Despite the trustees' assertions that "Judge Miller elevated Plaintiffs' constitutional references over the role that Plaintiffs had intended for them," the trustees' petition on appeal, which contains the following language, belies their contention:

The [Trustees] . . . respectfully show:

. . . . .

. . . That said action [rezoning] deprives your Petitioners of the beneficial use of their property without due process of law and without equal protection of the laws in violation of the Fourteenth Amendment of the Constitution of the United States and in further violation of Article 23 of the Maryland Declaration of Rights of the confiscation of property without just compensation contrary to rights protected under the Fifth Amendment of the Constitution of the United States and Article III, Section 40 of the Constitution of Maryland.

**2.** Exhibit 2, Motion to Dismiss filed by defendant State of Maryland.

Petition on Appeal, *In re* Application No. F–805, Law No. 36699 (Mont. County Cir. Ct., filed July 26, 1972).[3]

The Supreme Court in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), addressed the question of the effect to be given an earlier state court decision on an issue later raised in federal court. The Court stated:

> If the constitutional questions stated in the bill actually arose in the cause, it was the province and duty of the state courts to decide them; and their decision, whether right or wrong, was an exercise of jurisdiction. If the decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication.

263 U.S. at 415, 44 S.Ct. at 150. Just as in *Rooker*, absent some jurisdictional infirmity in the state proceedings, res judicata will bar the litigation of the taking question in this court.

The trustees argue that a jurisdictional infirmity did exist because the taking question was not properly before the circuit court and that Count I is therefore not barred by res judicata. The trustees' argument begins with the following language from *County Council v. District Land Corp.*, 274 Md. 691, 704, 337 A.2d 712, 719 (1975):

> While both District Land and the Trustees in their appeals to the lower court challenged the idea that the rezoning bore a reasonable relation to the general welfare, in the briefs which they filed there and at argument before us they seek to skirt the issue by relying on the notion that the Council acted in bad faith in its effort to achieve an improper purpose and thus reached a result which was both arbitrary and discriminatory. This argument must fail if we confine ourselves to a consideration of only that which was properly before the trial court, a problem to be hereinafter considered.

With the foregoing as their point of departure, the trustees argue that the Maryland Court of Appeals, and presumably the circuit court, lacked jurisdiction to decide the taking question because the appeal was confined to a review of the administrative record. At first blush, the trustees' position has some facial validity, but a closer analysis reveals that because their reliance on *District Land* is misplaced, their major premise is faulty and their position without support.

In the circuit court, the trustees introduced depositions and correspondence of state officials in an effort to impugn the Council's motive in enacting Resolution 7–797. On appeal, the Court of Appeals held that, in the absence of an allegation of fraud, inquiry into the Council's motive was improper, and the circuit court erroneously relied on Maryland Rule B10 in admitting the trustee's evidence. Rule B10 provides "Additional evidence may be allowed when permitted by law." Far from a broad holding that appeals of zoning decisions are limited solely to the administrative record, the Court of Appeals simply held the trustees' evidence was not permitted by law and therefore was not properly admitted.

A number of Maryland cases show that under the B Rules the trustees could raise the taking question on appeal to the circuit court and present additional evidence showing that the zoning was confiscatory. In *Tauber v. Montgomery County Council*, 244 Md. 332, 223 A.2d 615 (1966), the County Council, sitting as the District Council, denied a request for a zoning change. On appeal, the owners contended before the circuit court and the Court of Appeals that the denial was arbitrary, unreasonable and capricious and that the Council's refusal denied all reasonable use of their property. The Court of Appeals rejected both arguments, finding that evidence showed the Council's decision to be fairly debatable and that the owners had not shown that they were unable to utilize the property for any of the permitted uses under the existing zoning. 223 A.2d at 617–18. In *Montgom-*

---

**3.** Exhibit 2, Motion to Dismiss filed by defendant Montgomery County.

*ery County Council v. Kacur*, 253 Md. 220, 252 A.2d 832 (1969), the property owners appealed the Council's denial of a zoning reclassification. In refusing the requested change, the Council adopted the report and recommendation of a hearing examiner which concluded, *inter alia*, that the owners failed to prove an unconstitutional deprivation of their property. 252 A.2d at 835–36. Although the circuit court reversed the Council's decision, the Court of Appeals reversed the circuit court and affirmed the Council's decision because the owners once again failed to prove that the existing zoning deprived them of all reasonable use of their property. 252 A.2d at 837–39. Similarly in *City of Hagerstown v. Hutson*, 229 Md. 475, 184 A.2d 811 (1962), the owners sought a permit to use a lot for a filling station on the ground that the existing zoning amounted to a confiscatory taking. The circuit court found that the only economic use for the property was commercial and reversed the board of zoning appeals' decision. 184 A.2d at 812. The Court of Appeals remanded, without affirmance or reversal, because the owners failed to show that their property could not be used for any of the uses permitted by the applicable zoning. The Court of Appeals ordered a remand for the taking of additional evidence which would either sustain or defeat the owners' allegations that an unconstitutional taking had occurred. The court specifically referred to Maryland Rule of Procedure B10 when it directed the remand to consider the feasibility of the other uses allowed by the controlling ordinance. 184 A.2d at 814.

It is apparent that, contrary to the trustees' assertion, they had the opportunity to present the taking question to the circuit court and in fact did so. The trustees made a tactical choice to challenge the zoning by discrediting the Council's motives. Although the Court of Appeals held that mode of attack improper, the Court of Appeals did not restrict the trustees' ability to introduce other evidence to prove their fifth amendment claim. The trustees simply did not prove to the satisfaction of the circuit court that the enactment of Resolution 7 ·

797 constituted a taking. The trustee's failure to appeal the taking question in the Maryland appellate courts does not aid them in their attempt to collaterally attack that judgment. The Court in *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940), stated:

> The remaining question is simply whether respondents having failed to raise the question in the proceeding to which they were parties and in which they could have raised it and had it finally determined, were privileged to remain quiet and raise it in a subsequent suit. Such a view is contrary to the well-settled principle that *res judicata* may be pleaded as a bar, not only as respects matters actually presented to sustain or defeat the right asserted in the earlier proceeding, "but also as respects any other available matter which might have been presented to that end."

308 U.S. at 378, 60 S.Ct. at 320 [citation omitted]. *See* Restatement of Judgments, § 48, Comment a (1942). The proper means to overturn the decision of the circuit court was by direct appeal to the Maryland courts, and not by collateral attack in this court.

Even if the court were to assume that the trustees are correct in arguing that the circuit court lacked subject matter jurisdiction to consider the taking question in an administrative appeal, the fact remains that the circuit court rendered a judgment on that issue.

The Supreme Court in *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), discussed the effect to be given to an earlier court's erroneous determination that it possessed subject matter jurisdiction. The Court stated:

> Every court in rendering a judgment, tacitly, if not expressly, determines its jurisdiction over the parties and the subject matter. An erroneous affirmative conclusion as to the jurisdiction does not in any proper sense enlarge the jurisdiction of the court until passed upon by the court of last resort, and even then the

jurisdiction becomes enlarged only from the necessity of having a judicial determination of the jurisdiction over the subject matter. When an erroneous judgment, whether from the court of first instance or from the court of final resort, is pleaded in another court or another jurisdiction the question is whether the former judgment is *res judicata*. After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact. We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction over the subject matter of the litigation.

305 U.S. at 171–72, 59 S.Ct. at 137 (footnotes omitted). Because "[t]he principles of *res judicata* apply to questions of jurisdiction as well as to other issues," *American Surety Co. v. Baldwin*, 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932), the trustees will be precluded from relitigating the taking question in the absence of any allegation of fraud connected with the judgment as long as the circuit court had jurisdiction over the parties. It is clear that the circuit court had jurisdiction over the parties, *Annotated Code of Maryland*, art. 66B, § 4.08(a) (Supp.1976), and the trustees have not alleged any fraud connected with the judgment.

▬ Consistent with *Stoll*, section 10 of the Restatement of Judgments (1942) provides:

## RES JUDICATA AND JURISDICTION OVER THE SUBJECT MATTER.

(1) Where a court has jurisdiction over the parties and determines that it has · jurisdiction over the subject matter, the parties cannot collaterally attack the judgment on the ground that the court did not have jurisdiction over the subject matter, unless the policy underlying the

doctrine of res judicata is outweighed by the policy against permitting the court to act beyond its jurisdiction.

(2) Among the factors appropriate to be considered in determining that collateral attack should be permitted are that

(a) the lack of jurisdiction over the subject matter was clear;

(b) the determination as to jurisdiction depended upon a question of law rather than of fact;

(c) the court was one of limited and not of general jurisdiction;

(d) the question of jurisdiction was not actually litigated;

(e) the policy against the court's acting beyond its jurisdiction is strong.

This is not a case in which the lack of subject matter jurisdiction was clear because as the discussion *supra* concluded, it is the opinion of this court that the circuit court, in fact, did have jurisdiction. Moreover, as a court of general jurisdiction, Md. Const., art. IV, §§ 1, 19, and 20; *First Fed. Commodity Trust Corp. v. Comm'r*, 272 Md. 329, 322 A.2d 539, 543 (1974), the circuit court was the court in which the taking question would have been litigated had a separate suit been instituted. In addition, confiscatory taking actions are not new to Maryland circuit courts, *see, e. g., Tauber v. Montgomery County Council, supra; Montgomery County Council v. Kacur, supra; City of Hagerstown v. Hutson.* The fact that the question of the circuit court's subject matter jurisdiction was not actually litigated in the state proceedings is of no import. Restatement of Judgments § 10, Comment c (1942). As with the circuit court's decision on the merits, the forum in which to attack the circuit court's exercise of jurisdiction was the Maryland appellate courts on direct appeal and not in this court by collateral attack. *Chicot County Drainage District v. Baxter State Bank, supra.*

▬ Under the strict mutuality of estoppel doctrine, only the parties in the prior litigation were bound by the judgment, *see, e. g., R. D. Wood Co. v. Phoenix Steel Corp.,* 327 F.2d 921, 924 (3d Cir. 1964), and therefore only the Council, as the sole defendant

in the state litigation, could use the circuit court judgment as a bar. That doctrine has been eroded, however, and the modern trend permits strangers to prior litigation to plead an earlier judgment defensively as collateral estoppel in a subsequent suit. *Pat Perusse Realty Co. v. Lingo*, 249 Md. 33, 238 A.2d 100 (1968); *Rachal v. Hill*, 435 F.2d 59, 61–62 (5th Cir. 1970); *see also, Zdanok v. Glidden Co.*, 327 F.2d 944, 954–56 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). *Cf. Humphreys v. Tann*, 487 F.2d 666, 671 (6th Cir. 1973), *cert. denied*, 416 U.S. 956, 94 S.Ct. 1970, 40 L.Ed.2d 307 (1974).

■ Before collateral estoppel may be involved, however, three requirements must be satisfied:

1) The issue decided in the prior litigation must be identical with the issue presented in the action in question;

2) The prior litigation must have resulted in a final judgment on the merits; and

3) The party against whom the estoppel is asserted must have been a party, or in privity with a party, to the prior litigation.

*Blonder-Tongue v. University of Illinois Foundation*, 402 U.S. 313, 323–24, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974). All of the prerequisites have been met in this action; the only question is whether the trustees had a full and fair opportunity to present their claims in the prior litigation. *Blonder-Tongue*, 402 U.S. at 333, 91 S.Ct. 1434. The court is of the opinion that the trustees have had that opportunity. The trustees chose to present the taking question to the circuit court and they did not appeal that court's adverse decision. The principles which prevent the trustees from collaterally attacking the judgment in favor of the Council, are equally applicable to the other defendants as well. Having litigated the taking question unsuccessfully once, the trustees may not relitigate that issue again against different defendants on the same underlying cause of action. Count I will be dismissed for lack of subject matter jurisdiction.

■ No independent federal jurisdiction exists over either the County or the Council following the dismissal of Count I. Even though the state law claims derive from a common nucleus of operative facts, this court may not exercise pendent jurisdiction over either of the defendants and must dismiss the claims in Count IV against them for lack of subject matter jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 18–19, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

The remaining question is whether the claims in Counts II and IV state a cause of action against the individual defendants. In Count II, the trustees allege that the individual council members' actions in adopting Resolution 7–797 denied the trustees "their right to equal protection of the laws and deprived [the trustees] of their constitutional right not to have their property taken without just compensation." The council members argue that they are absolutely immune under the federal common law for acts done while performing valid legislative functions and that the claims in Count II must be dismissed.

■ The trustees' previous attempt to delve into the motives of the Council was rejected by the Court of Appeals. *County Council v. District Land Corp.*, 337 A.2d at 720-21. Unlike the state proceedings where the trustees sought only to overturn the Council's zoning decision, the trustees now seek to impose personal liability on the council members for actions which the Maryland Court of Appeals found constitutionally valid. In *Garren v. City of Winston-Salem*, 463 F.2d 54 (4th Cir.), *cert. denied*, 409 U.S. 1039, 93 S.Ct. 519, 34 L.Ed.2d 488 (1972), the Fourth Circuit rejected a challenge to the rezoning of eighty-five acres of land to permit the construction of a sanitary landfill. Plaintiffs sought a declaration that the local zoning powers as applied to property located outside Winston-Salem was unconstitutional and an injunction prohibiting the enforcement of the ordinance as an unconstitutional exercise of the city's zoning powers. 463 F.2d at 56. After distinguishing *Garren* from voting

rights cases such as *Gomillon v. Lightfoot*, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960), the Fourth Circuit held:

> In these circumstances, the case comes down to a situation where the city is zoning and rezoning extraterritorial property which it owns in accordance with its constitutionally conferred statutory powers. "One has no constitutional right to a 'remedy' against the lawful conduct of another." *Senn v. Tile Layers Union*, 301 U.S. 468, 483, 57 S.Ct. 857, 864, 81 L.Ed. 1229 (1957). The remedy for any wrongs which appellants may have suffered or may suffer at the hands of the municipality in the exercise of its extraterritorial zoning powers does not lie under § 1983 of the Civil Rights Act.

463 F.2d at 57. While the Council did not own the property in question, the constitutionality of the rezoning was determined by *County Council v. District Land Corp., supra*. The Court of Appeals opinion is dispositive on the lawfulness of the Council's actions and the trustees' attempt to maintain an action against the individual council members must fail.

 Although closely related, the immunity argument raised by the Council members provides an independent basis for dismissal. The scope of the immunity enjoyed by local legislators to the section 1983 claims in Count II is, of course, a question of federal and not state law. *Qualls v. Parrish*, 534 F.2d 690, 694 (6th Cir. 1976); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 62, 478 F.2d 938, 972 (1973). There is not, however, complete judicial agreement on the scope of that immunity. *See Smetanka v. Borough of Ambridge*, 378 F.Supp. 1366, 1373 (W.D.Pa.1974); *Oberhelman v. Schultze*, 371 F.Supp. 1089, 1090 (D.Minn. 1974). *Compare, e. g., Shellburne, Inc. v. New Castle County*, 293 F.Supp. 237 (D.Del. 1968) (absolute immunity); *with, e. g., Nelson v. Knox*, 256 F.2d 312, 315 (6th Cir. 1958) (qualified good faith privilege). Defendants rely principally upon language found in *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951):

> The claim of an unworthy purpose does not destroy the privilege. Legislators are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader, or to the hazard of a judgment against them based upon a jury's speculation as to motives. The holding of this Court in *Fletcher v. Peck*, 6 Cranch (10 U.S.) 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned.

341 U.S. at 377, 71 S.Ct. at 788. Although *Tenney* can be distinguished because it dealt with state, rather than local, legislators, *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), suggests to this court the propriety of the extension of immunity to municipal legislators. Because municipal legislators are closer to their constituents than either their state or federal counterparts, they are, perhaps, the most vulnerable to and least able to defend lawsuits caused by the passage of legislation. Particularly in the area of land use, where decisions may have an immediate quantifiable impact on both the value and development of property, local legislators should be free to act solely for the public good without the specter of personal liability with the passage of each zoning ordinance. Persons aggrieved by zoning legislation may avoid its effects by challenging its validity on direct appeal, by seeking a special exception, or by raising the confiscatory taking question. Collateral litigation of the Council's motives, such as the trustees' attempt here, would subordinate the role of the legislative branch in contravention of our scheme of government. *Tenney v. Brandhove*, 341 U.S. 377, 71 S.Ct. 783 (1951). The court holds that municipal legislators are absolutely immune from damages in section 1983 suits for actions taken within the scope of their valid legislative authori-

ty. *Athanson v. Grasso*, 411 F.Supp. 1153, 1160 (D.Conn.1976). The Council members' motion to dismiss Count II will be granted. The claims in Count IV against the Council members will be dismissed as well for lack of subject matter jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 18–19, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

Accordingly, it is this 23rd day of November, 1977, ORDERED that defendants' motions to dismiss be, and hereby are, GRANTED.